**Steven D. Olson**, OSB No. 003410
  Direct Dial: 503.802.2159
  Direct Fax: 503.972.3859
  Email: steven.olson@tonkon.com
**Paul Conable**, OSB No. 975368
  Direct Dial: 503.802.2188
  Direct Fax: 503.972.3888
  Email: paul.conable@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204-2099

    Attorneys for Plaintiff Leif Hansen

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| LEIF HANSEN, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Maryland corporation,<br><br>     Defendant. | Civil No. 3:17-cv-1986<br><br>**CLASS ACTION**<br><br>**COMPLAINT (Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing)**<br><br>**DEMAND FOR JURY TRIAL** |

    For his Complaint against Defendant Government Employees Insurance Company

("GEICO"), Plaintiff Leif Hansen ("Leif"), individually and on behalf of all similarly-situated

members of the Class, alleges as follows:

## INTRODUCTION

1.      This case involves a nationwide policy and practice by GEICO under which GEICO has routinely refused to compensate GEICO car insurance policyholders for essential repairs, in particular for electronic scans of their vehicles after collision repairs. Automobile manufacturers currently require or recommend these scans before and after collision repairs.

2.      As a result of GEICO's conduct, policyholders do not receive payment for the full extent of their losses and are denied complete and safe repairs.

3.      Under its policies, GEICO is required to compensate policyholders the sum of money required to return their vehicles to pre-loss condition.  By refusing to compensate policyholders for electronic scans, GEICO violates the terms of its car insurance policies, issued to each policyholder.  Without the electronic scans, damage to the policyholders' vehicles goes undetected; system problems go unexplained; and GEICO puts unsafe cars back on the roads.

## PARTIES

4.      Leif is an individual who is a citizen of the state of Oregon.  He is a GEICO policyholder.

5.      GEICO is a foreign corporation with its principal place of business in Chevy Chase, Maryland.  During all relevant time periods, it has been licensed by the Oregon Department of Consumer and Business Services to conduct business and sell insurance products in Oregon.  GEICO sells and/or underwrites car insurance policies that provide collision repair coverage in the state of Oregon, as well as throughout the United States.  GEICO is currently the second largest private passenger automobile insurance carrier in the country by market share.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over all claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and diversity of citizenship exists between Leif and GEICO.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the acts and events giving rise to Leif's claims occurred here.

**FACTUAL ALLEGATIONS**

**A.      Leif's Individual Factual Allegations**

8.      GEICO sells car insurance, including coverage for collision losses, to drivers in Portland, Oregon, and across the United States.  GEICO holds itself out as a low-cost automobile insurer, but endeavors to decrease the sum GEICO must pay its policyholders by refusing to compensate policyholders for necessary and complete repairs.

9.      Leif holds a GEICO car insurance policy, including coverage for collision losses, for his 2017 GMC Sierra 3500 pickup truck ("Sierra 3500").

10.      GEICO's car insurance policy (the "Policy") uses standard language provided by Insurance Services Office, Inc.  As part of that standardized language, the Policy specifies that GEICO "will pay for collision loss to the owned auto or non-owned car for the amount of each loss less the applicable deductible."  In relevant part, the Policy defines loss as "direct and accidental loss of or damage to * * * an insured auto, including its equipment."

11.      In or about November 2017, Leif's Sierra 3500 suffered damage to the rear bumper in a collision.  On Saturday, November 4, 2017, he filed a claim with GEICO and received an appointment time for a repair estimate at Artistic Car Body ("Artistic").

12.     During his appointment for a repair estimate at Artistic, Leif requested pre- and post-repair electronic scans to ensure that his vehicle was repaired safely and completely.  Leif knew the scans were a necessary part of collision repairs from his experience as an owner of a group of Portland-area auto repair shops.

13.     Pre- and post-repair electronic scans use software to test for diagnostic trouble codes that identify potential damage and help ensure safe and complete repairs.  In cars with advanced driver assistance systems, electronic scans are necessary to ensure proper calibration after repairs.

14.     Electronic scans cost roughly $100 each.

15.     Nissan, Honda, Toyota, and General Motors, among other manufacturers, have issued public statements requiring or recommending that auto collision repair shops use electronic scans before and after repairs.

16.     General Motors, for example, has released a position statement

> [t]hat all vehicles being assessed for collision damage repairs must be tested for Diagnostic Trouble Codes (DTCs) during the repair estimation in order to identify the required repairs.  Additionally, the vehicle must be re-tested after all repairs are complete in order to verify that the faults have been repaired and new faults have not been introduced during the course of repairs.  Even minor body damage or glass replacement may result in damage to one or more safety-related systems on the vehicle. Any action that results in loss of battery-supplied voltage and disconnection of electrical circuits requires that the vehicle is subsequently tested to ensure proper electrical function.

17.     The Automotive Service Association, an independent organization dedicated to advancing the automotive repair industry, also released a public statement endorsing electronic system scanning as necessary for safe collision repairs.

18.     Nissan, Honda, Toyota, General Motors, along with other vehicle manufacturers, and the Automotive Service Association require or recommend pre- and post-repair electronic scans whether or not maintenance lights are illuminated on a vehicle's dash.

19.     When Leif requested the electronic scans on his General Motors vehicle, for which the manufacturer requires pre- and post-repair scans, GEICO's representative refused to authorize the scans because GEICO would not cover the scans unless there was a maintenance light illuminated on the Sierra 3500's dash.

20.     On or about November 8, 2017, Leif again requested electronic scans to ensure that the Sierra 3500 had been safely and completely repaired.  GEICO's representative again refused to authorize the scans.

21.     GEICO continues to refuse to compensate Leif for pre- and post-repair electronic scans on the Sierra 3500.  GEICO's conduct has prevented Leif from receiving the electronic scans mandated by General Motors, thereby disregarding the manufacturer's recommendations and putting the truck at risk for having undetected repairs and being unsafe to drive.

22.     Leif has personal knowledge of other instances where GEICO refused to compensate a policyholder for pre- and post-repair electronic scans that are required or recommended by the vehicle manufacturer.  Earlier in 2017, for example, a customer brought a car to one of Leif's auto repair shops.  The car had airbag and steering system problems that could have been avoided had GEICO authorized pre- and post-repair electronic scans to detect unresolved damage.  GEICO continues to refuse to cover the cost of electronic scans that could help resolve the airbag and steering system issues for this car.

23.    Moreover, GEICO has stated in writing its practice of refusing to authorize electronic scans at any and all collision repair shops. GEICO Auto Damage Adjuster Timothy Lewis has clearly stated GEICO's policy that, "There will be no pre-approval of these scans before they are performed." GEICO also requires "[a]n *official document* from the manufacturer" stating that "the scan is *required* for the particular make, model and year of the vehicle." (Emphasis added.) But as GEICO well knows, this policy guarantees that no scan will be pre-approved because although automobile manufacturers have issued official statements requiring or recommending electronic scans, no manufacturer issues such official documents for particular vehicle makes, models, and years.

**B.    Putative Class Allegations**

**1.    GEICO's Practices With Regard to Members of the Putative Class**

24.    Leif realleges paragraphs 1 through 23 of this Complaint.

25.    GEICO has a nationwide practice of denying compensation for necessary pre- and post-repair electronic scans to policyholders' vehicles under the pretext that the Policy does not cover them.

26.    GEICO's practice of denying payment for pre- and post-repair electronic scans results in GEICO denying its policyholders full compensation to pre-loss condition for their vehicles.

27.    When GEICO underpays for its policyholder losses, GEICO pockets money that it otherwise would have to pay out in compensation for pre- and post-repair electronic scans, as well as any additional necessary repairs detected by such scans.

28.     GEICO's conduct violates the express terms of the Policy, which obligates GEICO to pay for all collision losses, excepting only the applicable deductibles and other exclusions that do not apply here.

**2.     Rule 23 Allegations**

29.     Leif brings this action as a Class Action under Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3), on behalf of a nationwide class of current and former GEICO car insurance policyholders in the United States who suffered losses caused by collisions within six years of the date of the filing of this Complaint.

30.     The exact number of Class members is not presently known to Leif, but can be determined readily by appropriate discovery.  On information and belief, Leif alleges that in 2016, GEICO insured 11.92% of all drivers who carried car insurance in the United States, more drivers than any other private passenger auto insurance carrier other than State Farm.  The Class is thus so numerous that joinder of all Class members is impracticable.

31.     Leif can and will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in Class Actions and breach of contract claims.

32.     Leif's claims, as those of the representative party, are typical of those of the Class.

33.     A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.     The damages suffered by many individual members of the Class may be relatively small, and thus the expense and burden of individual litigation

makes it virtually impossible for the members of the Class individually to seek redress for the wrongful conduct alleged herein;

b.    Class members do not have an overriding interest in individually controlling the prosecution of separate actions;

c.    No Class member has commenced litigation concerning this breach of contract controversy;

d.    Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

e.    The prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications establishing incompatible standards of conduct for GEICO.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members.  Among the questions of law and fact common to the Class are:

a.    Whether GEICO refused to pay policyholders for pre- and post-repair electronic scans that were required or recommended by vehicle manufacturers and independent industry authorities;

b.    Whether pre- and post-electronic scans and the diagnostic codes associated with them qualify as a "loss" or "repair" under the terms of the Policy;

c.    Whether GEICO's conduct breached the terms of the Policy, issued to each policyholder; and

PAGE 8 -    CLASS ACTION COMPLAINT

d.      Whether Leif and Class members have sustained injury by reason of

GEICO's acts and omissions.

35.      Leif envisions no difficulty in the management of this litigation as a Class

Action.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

36.      Leif realleges paragraphs 1 through 35 of this Complaint.

37.      The Policy specifies that GEICO will either pay for all "direct and

accidental loss of or damage to * * * an insured auto, including its equipment" after collisions or

make the necessary repairs itself, subject only to certain exclusions that are not applicable here.

38.      All of GEICO's automobile insurance policies contain the language set

forth in paragraph 37 above.  The Policy uses the standard form language approved by Insurance

Services Office, Inc.

39.      GEICO policyholders pay insurance premiums in exchange for coverage

under the Policy.

40.      The Policy constitutes a valid and enforceable contract between GEICO

and policyholders.

41.      As a matter of policy and practice, GEICO does not compensate

policyholders for pre- and post-repair electronic scans after collisions.  This results in

policyholders receiving incomplete compensation for their collision losses both for the scans

themselves and for further necessary repairs that the scans would reveal.

42.      GEICO's failure to compensate policyholders for the full extent of their

losses following collisions violates the express terms of the Policy.

43.      As a direct result of GEICO's breach of its insurance Policy, Leif and members of the Class have (a) been denied payment for electronic scans that should have been covered by their GEICO insurance policies; (b) been deprived of the use of their vehicles because of unsafe or incomplete repairs after collisions; and (c) driven vehicles that were unsafely or incompletely repaired after collisions.

44.      Leif and members of the Class are entitled to recover actual damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

45.      Leif realleges paragraphs 1 through 44 of this Complaint.

46.      In every contract there is an implied covenant known as the covenant of good faith and fair dealing that neither party will do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

47.      GEICO's policyholders have a reasonable expectation, rooted in the plain language of the Policy, that GEICO will compensate them in an amount sufficient to obtain complete and safe repairs.  However, GEICO's policy of denying pre- and post-repair scans, in direct opposition to manufacturer and industry recommendations, frustrates this reasonable expectation.

48.      GEICO has breached the implied covenant of good faith and fair dealing inherent in the Policy by deliberately depriving policyholders of the benefits of the contract by failing to pay for repairs necessary to restore vehicles to pre-loss condition.  GEICO has instead caused policyholders to accept vehicles that are unsafely or incompletely repaired after collisions and whose value has been diminished from their value before the collision.  In cases where the

policyholder accepts payment in lieu of repair, GEICO regularly makes payments far below the actual amount of loss.

49.    GEICO has used its superior knowledge and bargaining position to deprive unwitting policyholders of the benefit of the Policy.

## RELIEF REQUESTED

WHEREFORE, Leif, on behalf of himself and members of the Class, demands judgment as follows:

1.    Judgment in favor of Leif and the Class and an award of:

    a.    Actual damages for losses incurred by Leif and each member of the Class;

    b.    Costs incurred in bringing this action;

    c.    Pre- and post-judgment interest; and

2.    Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Leif, on behalf of himself and members of the Class, demands a jury trial.

DATED this 13th day of December, 2017.

TONKON TORP LLP

By: *Steven D. Olson*
      Steven D. Olson, OSB No. 003410
      Paul Conable, OSB No. 975368

      Attorneys for Plaintiff Leif Hansen

097204/97204/8519989v1

PAGE 11 -   CLASS ACTION COMPLAINT