```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF OREGON

 3   LEIF HANSEN, on behalf of    )
     himself and all others       )
 4   similarly situated,          )
                                  )
 5              Plaintiff,        )  Case No. 3:17-cv-01986-MO
                                  )
 6        v.                      )
                                  )
 7   GOVERNMENT EMPLOYEES INSURANCE)  April 5, 2018
     COMPANY, a Maryland          )
 8   corporation,                 )
                                  )
 9              Defendant.        )  Portland, Oregon
     _____)

10

11

12

13

14

15

16                      Oral Argument

17              TRANSCRIPT OF PROCEEDINGS

18        BEFORE THE HONORABLE MICHAEL W. MOSMAN

19      UNITED STATES DISTRICT COURT CHIEF JUDGE

20

21

22

23

24

25
```

```
 1

 2                              APPEARANCES

 3

 4   FOR THE PLAINTIFF:        Mr. Paul W. Conable
                              Mr. Steven D. Olson
 5                            Tonkon Torp LLP
                              888 S.W. Fifth Avenue, Suite 1600
 6                            Portland, OR 97204

 7

 8

 9   FOR THE DEFENDANT:        Mr. Dan W. Goldfine
                              Mr. Ian M. Fisher
10                            Lewis Roca Rothgerber Christie LLP
                              201 East Washington Street, Suite 1200
11                            Phoenix, AZ 85004

12

13                            Mr. Scott A. Brooksby
                              Olson Brooksby PC
14                            1020 S.W. Taylor Street, Suite 400
                              Portland, OR 97205
15

16

17

18   COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                              United States District Courthouse
19                            1000 S.W. Third Ave., Room 301
                              Portland, OR  97204
20                            (503) 326-8188

21

22

23

24

25
```

```
1                    (P R O C E E D I N G S)

2                      (April 5, 2018)

3          THE CLERK:  Your Honor, this is the time set for oral

4   argument in Case No. 3:17-cv-1986-MO, Hansen v. Government

5   Employees Insurance Company.

6          Counsel, can you please state your name for the

7   record.

8          MR. BROOKSBY:  Your Honor, Scott Brooksby for the

9   defendant.

10         MR. GOLDFINE:  Dan Goldfine for the defendant,

11  Government Employees Insurance Company.

12         MR. FISHER:  Ian Fisher for the defendant.

13         MR. CONABLE:  Good afternoon, Your Honor.  Paul

14  Conable for plaintiff.

15         MR. OLSON:  Steve Olson for the plaintiff, Your

16  Honor.

17         THE COURT:  Thank you all for being here.

18         I'd like to focus on the defense argument about

19  failure to state a claim, for the moment stay away from

20  standing and justiciability or redressability.

21         And so that principal theory, as you've all seen from

22  the briefing, is that if a breach of a contract is

23  fundamentally a broken promise, that the specific promise here

24  to pay for direct and accidental loss or damage to the car

25  hasn't been broken because there's been no identified loss or
```

1  damage to the car that wasn't paid for.

2      Fairly simple argument, mercifully put forth

3  initially, at least, in a fairly brief pleading.

4      So, Mr. Conable, are you going to start out on that?

5      MR. CONABLE:  I'd be happy to, Your Honor.  Thank

6  you.

7      THE COURT:  So help me understand better than I now

8  do what it is, in terms of what the contract promises, that

9  your opponent didn't do.

10      MR. CONABLE:  They didn't agree to pay for mandatory

11  pre- and post-accident electronic scanning, and that scanning

12  is part and parcel of the repair.  The contract requires them

13  to perform a complete repair and to return the vehicle to

14  pre-loss condition.

15      THE COURT:  I want to start, before we move to the

16  idea of repairs, I want to start specifically with the contract

17  language and then work our way there.

18      So when I ask what part of the contract wasn't met

19  here, we're referring, aren't we, to the idea that it's not so

20  much that they agree to repair, they agree to pay for all loss

21  from -- loss or damage to the car, right?

22      MR. CONABLE:  Correct, Your Honor.  The language is

23  set out, the pertinent language is set out in paragraph 10 of

24  our complaint.

25      THE COURT:  So you're saying that there is a loss or

1    damage to the vehicle that wasn't paid for?

2              MR. CONABLE:  That's correct, Your Honor.

3              THE COURT:  And the scan becomes a loss or damage

4    how?

5              MR. CONABLE:  Part and parcel of repairing a car to

6    pre-loss condition is ascertaining what's wrong with the car.

7    We wouldn't be here if the question was whether, for example,

8    GEICO had to pay for the amount of labor required for a

9    technician to lift the hood or to pull off a fender to look and

10   see or to measure.  There's something about -- they focus their

11   argument on the possibility that a scan won't reveal damage.

12   But when a manufacturer says that part of repairing a car, a

13   mandatory part of repairing the car is to conduct these scans,

14   that is part and parcel.  It's like saying you don't have any

15   damage for your broken leg, for the x-ray for your broken leg

16   because the x-ray might have ended up not showing anything.

17   No.  The scan is indivisibly part of the repair.

18              THE COURT:  Why in the contract is ascertaining the

19   amount of damage on the insurer?  If I'm an insurer and I say,

20   whatever you tell me that I agree to is the damage, fine, then

21   why isn't it on the insured to say, okay, well, here's the

22   amount of damage to my car?

23              MR. CONABLE:  Why isn't it on the insured?

24              THE COURT:  Your argument is that it's sort of on the

25   insurance company, on GEICO here to go and figure out the

1    amount of loss.  Why isn't that on the insured to say, well,

2    here, I'm presenting to you the amount of loss?  I mean, we'd

3    have a different case, wouldn't we, if your client had done a

4    scan and then said, here's more loss than you knew of, and the

5    insurance company would then, assuming it was legit, would have

6    to pay it, right?

7             MR. CONABLE:  We're not attempting to shift to the

8    insurance company the duty to perform the scan, just to pay for

9    the diagnostic elements of a repair.  So you're correct.  I

10   would agree with Your Honor that it's the insured and really

11   the insured's body shop that is going to do the work of saying

12   here are the things that we did, these are the elements that

13   are necessary for this full repair.  And then the insurer's

14   duty is to pay for it under the contract.

15            What the insurer is doing here is saying

16   categorically, we will not pay for this part of that repair

17   process.  So the part of the repair process that is following

18   the manufacturer's requirements, following the ASA

19   recommendations for how you repair a car, for how you figure

20   out what's wrong with a car, we're not going to pay for that

21   part.

22            So it's difficult from our perspective to say, on the

23   one hand, it is the responsibility of the insured and his or

24   her body shop to determine what needs to be fixed in this car,

25   but then to say --

1    THE COURT:  Well, so you agree with that much?  It is

2  the insured's ultimate obligation to present to the insurer

3  here the damage?

4    MR. CONABLE:  Yes.  And it is the insurer's

5  obligation to pay for the diagnostics necessary for the insured

6  to be able to make that presentation.

7    THE COURT:  And that's why?  I mean, contractually

8  speaking.

9    MR. CONABLE:  Because the contract requires GEICO to

10  restore the car to pre-loss conditions.  It's the manufacturers

11  of the cars we're talking about saying it is a mandatory part

12  of the repair to conduct these scans.  And so to say --

13    THE COURT:  That's just your part and parcel

14  argument.  It's not textual, right?  There's nothing in the

15  text that says we'll pay for damage and we'll pay for

16  diagnostics to determine damage.  It says we'll pay for loss.

17    MR. CONABLE:  We'll pay for loss.  There's nothing in

18  the contract that says we'll pay for tires.  There's nothing in

19  the contract that says that we'll pay for paint.

20    THE COURT:  If you lose a tire, then you don't need

21  the contract to say we'll pay for tires because it's part of

22  the loss.

23    MR. CONABLE:  And you'll be able to tell you lost a

24  tire because anybody can look at the car and see that a tire is

25  gone.  But what if you've lost something else?

1          THE COURT:  I'm just asking right now about text.

2     I'll get to other arguments.

3          But you'll have to agree, won't you, that the text

4     doesn't say we commit to pay for diagnostics?

5          MR. CONABLE:  The text does not use the word

6     "diagnostic" or "scan."  The text uses the word "repair to

7     pre-loss condition."

8          When a manufacturer says part of repairing to

9     pre-loss condition is conducting pre- and post-repair scans,

10    that is part of repairing a car to pre-loss condition.

11         THE COURT:  What if it's not the manufacturer saying

12    so?  What if it's just an insured saying, well, I really think

13    this is important, and so I think you ought to do this?

14         MR. CONABLE:  Regardless of any -- for example, if I

15    have a 1980 Dodge Aries, and I come in and say, Your Honor, I

16    -- or excuse me, Your Honor.

17         GEICO, I'd like to have these scans, and GEICO says,

18    no, your car is not on a computer system, we're not going to do

19    that, and then I say, well, I'd like it anyway, that's not what

20    we've alleged in this case.  Our allegations in this case have

21    to do with vehicles like Mr. Hansen's vehicle.

22         THE COURT:  So it has to do with being ASA required?

23         MR. CONABLE:  It has to do with being mandatorily

24    required by the manufacturer of this vehicle as part of the

25    repair of the vehicle.  The ASA is the cherry on top.

1          THE COURT:  I don't know what you mean first by

2   mandatorily required.  I mean, how does a manufacturer tell

3   GEICO what they must do?

4          MR. CONABLE:  The manufacturer is not telling GEICO

5   what they must do.  The manufacturer is telling repair shops

6   what they must do.

7          THE COURT:  Must do or what?  You'll go to jail?

8          MR. CONABLE:  No.  If the question is what is a

9   repair of a GM vehicle, and GM says --

10          THE COURT:  Well, I guess what I'm getting at by

11   these questions, I'm trying to get at what the point -- the

12   principle is that divides your Dodge Aries from your GMC

13   Sierra, you know.

14          MR. CONABLE:  Because no manufacturer --

15          THE COURT:  Is it manufacturers that divide it?  Like

16   if the manufacturer says this is necessary, then that's what

17   makes it necessary to do the diagnostic test?

18          MR. CONABLE:  At least, yes.  I mean, we can argue

19   about whether with respect to a car -- we don't have an

20   allegation in this case because Mr. Hansen's vehicle -- we

21   don't have an allegation in this case that applies to -- there

22   may be a group of cars that fall within this class as to which

23   the ASA says you need to do these diagnostics and the

24   manufacturer doesn't, and that to me is a question of --

25          THE COURT:  Mr. Conable, the reason I'm pressing you

1   on this is that although I'm not sure I got you to agree, I

2   think it's true that this is something that has to be sort of

3   read in between the lines here of the text of this contract.

4            The contract doesn't promise to do anything other

5   than pay for loss.  And you're saying part and parcel, which is

6   sort of, to coin a phrase, a penumbra argument that it's

7   necessary.  Although not promised, it's necessary to do this.

8            And I'm trying to figure out what makes it necessary

9   in what cases, because ultimately I'm not just going to

10  announce a rule that will decide this case, it will be talked

11  about by other people in other cases, and they're going to say,

12  well, what is the principle here?  Is it necessary in ASA

13  cases, where ASA rules say it should be done?  Is it necessary

14  when the insured puts an expert on the stand and says that the

15  industry standard is this, or is it necessary when you have

16  declarations from ten thousand people that they think it's

17  important to do it?  I mean, you know, you've used an external

18  source -- manufacturers and ASA -- to import into the contract

19  something that the contract doesn't expressly say.

20           I'm not suggesting that's not legit, I'm just saying

21  how far does that principle go?

22           MR. CONABLE:  Well, I'm -- let me start by taking

23  slight issue with a remark you made a moment ago, which is that

24  this is penumbral and not promised.  They promised to return

25  the vehicle to pre-loss condition.  If the manufacturer says

1   that, and the ASA says that in order to determine what
2   condition the vehicle is in you must conduct these pre and post
3   electronic scans at least with respect to certain enumerated
4   vehicles, then part of determining whether they kept their
5   promise to pay for restoring the car to pre-loss condition is
6   to allow the body shop --
7         THE COURT:  Sure.  That doesn't change the concern I
8   raised a moment ago at all.  That just means if the same thing
9   is true but not expressed by manufacturers now but expressed by
10  a plaintiff's expert or expressed by 10,000 declarations or
11  four trade journal articles or newspaper articles, I mean, you
12  know, you're still referring to external sources to create this
13  expectation that return to pre-loss condition requires X.
14        So today you want to rely on what you might sort of
15  refer to as the pinnacle of this pyramid of possibilities, but
16  it won't end today if I say that this is what's required.
17        So what's not the facts but the principle that you're
18  relying on to say that this is part of what's necessary to
19  return to pre-loss condition?
20        MR. CONABLE:  Your Honor articulated it, and it's
21  industry standard.  And we're here on a motion to dismiss, and
22  there are going to be fact questions inherent in determining
23  whether with respect to a particular vehicle, my 1980 Dodge
24  Aries K or, as you said, the pinnacle vehicle, where the
25  manufacturer and the ASA say these scans are required.  There's

1    a fact issue, and I'm not -- I wouldn't dispute with you that

2    if I were in here talking about a '57 Chevy, it doesn't have a

3    computer system in it.  There's a point beyond which you can't

4    extend this.

5         I don't believe that to deny this motion to dismiss

6    the class certification at summary judgment is still in this

7    case.  I don't believe that to deny this motion to dismiss,

8    Your Honor is required to issue a ruling that says yes with

9    respect to these cars and no with these.

10        Mr. Hansen's car is a pinnacle.  Mr. Hansen's car is

11   a car as to which the manufacturer and the ASA say these scans

12   are required as part of the process of determining whether the

13   car is in pre-loss condition.  So for purposes of the motion to

14   dismiss, I would confidently expect that on class

15   certification, summary judgment, and at trial, if any of those

16   occur, GEICO will make strong efforts to cabin the expanse of

17   potential vehicles and claimants as to whom this can apply and

18   its standards will have to be applied.

19        All I'm saying is that in a motion to dismiss that

20   asks this Court to say that as a matter of law, this contract

21   doesn't require GEICO to pay for pre and post scans even for

22   car's like Mr. Hansen's, as to which the manufacturer says

23   those scans are required.

24        THE COURT:  All right.  Thank you.

25        MR. GOLDFINE:  Your Honor, thank you for your time.

1            Let me try to attempt to articulate.  We have an
2  agreement in place, as the Court identified.  It turns on
3  specific words, which is "damage to the vehicle."  That's the
4  operative word.  It's not repair, it's not anything else.  It
5  turns on damage to the vehicle.  And there's a disconnect
6  between the absence of allegations of damage to the bumper that
7  hasn't been compensated by GEICO and the diagnostic scans, as
8  alleged here.
9            THE COURT:  Does the contract talk about pre-loss
10 condition?
11           MR. GOLDFINE:  The contract, in fact, does not
12 discuss pre-loss condition, but the contract says damage -- in
13 this case damage to the bumper.  We have to compensate for
14 damage to the bumper.  But they've alleged --
15           THE COURT:  Well, if we're going to be precise, then
16 the contract doesn't talk about damage to the bumper.
17           MR. GOLDFINE:  It talks damage to the vehicle, is the
18 operative language.
19           THE COURT:  So you promise to pay for any loss from
20 damage to the vehicle?
21           MR. GOLDFINE:  I mean, there could be other
22 vehicle -- it could be a total loss, for example, but for this
23 particular case, it would be we have promised to pay for damage
24 to the vehicle caused by a collision.  That's the operative
25 language of the contract.

1    THE COURT:  All right.

2    MR. GOLDFINE:  And there's a disconnect between the

3    demand for scans in their allegations and the damage as set

4    forth in the contract, which is their breach of contract claim.

5    And, you know, their opportunity to have a preferred set of

6    diagnostic tools is not set forth in the contract.  We are

7    obligated, as the Court identified -- Let me take a step back.

8    Plaintiff is obligated to tell us what the damage is --

9    THE COURT:  Is a plaintiff obligated to pay on their

10   own for any -- any, not just these, in this case, but any

11   diagnostic tools it uses to learn the extent of damage?

12   MR. GOLDFINE:  As alleged in this particular item,

13   they have not identified any damage that hasn't been

14   compensated, so I can't -- there's going to be all sorts of

15   different circumstances.

16   THE COURT:  I don't think my question is quite as

17   tricky as you must think it is.  I'm just asking in a typical

18   case, under a contract like this one, if the insured had to go

19   to diagnostic steps -- not scans but other less expensive, more

20   quotidian diagnostic steps -- does the insurance company pay

21   for those or not?

22   MR. GOLDFINE:  It really depends on the

23   circumstances.

24   So typically there's a diagnostic step of doing the

25   estimate.  It doesn't pay for the cost of doing the estimate.

| | |
|---|---|
| 1 | THE COURT:  The reason I'm asking this question is |
| 2 | there's sort of two ways to think about what the insurance |
| 3 | company has promised, and it may be a function of practice more |
| 4 | than promise, but, you know, you can draw that very severely. |
| 5 | You can say, we only promise to pay for loss, we never promise |
| 6 | to pay for diagnostic steps.  Whether that's, you know, paying |
| 7 | someone to take photos or paying someone to take a look at it |
| 8 | or paying someone to open the hood up or whatever it might be, |
| 9 | we don't pay for diagnostics, just damage. |
| 10 | And the others say, well, we sometimes pay because |
| 11 | it's essential to learn loss, but we don't pay for weird ones |
| 12 | that we've never heard of before. |
| 13 | Now, I don't know which one you're talking about |
| 14 | here. |
| 15 | MR. GOLDFINE:  Well, I think there's -- |
| 16 | unfortunately, as to the hypothetical examples that are outside |
| 17 | this four square, there's a whole -- maybe 100 different |
| 18 | scenarios that could occur. |
| 19 | THE COURT:  What I'm asking, then, is this contract |
| 20 | language that we're focusing on here, does it in any measure |
| 21 | promise to pay for diagnostic steps? |
| 22 | MR. GOLDFINE:  No, it doesn't promise -- the language |
| 23 | promises to pay for the damage to compensate -- minus the |
| 24 | deductible, to compensate for the damage that's occurred that's |
| 25 | presented and that exists on the car. |

1      THE COURT:  And so you reject the idea that even if

2  manufacturers say that you must take certain diagnostic steps

3  to repair the damage, that that's part and parcel of paying for

4  damage?

5      MR. GOLDFINE:  Yes, absolutely.

6      THE COURT:  Because you just didn't promise to do

7  that?

8      MR. GOLDFINE:  Not only didn't promise to do that,

9  but, one, the manufacturers can't bind GEICO under the

10  contract; and two, there are a -- to use your word -- a

11  penumbra of different reasons and explanations and, in fact,

12  different statements, policy statements as to -- or position

13  statements as to what should take place with respect to scans

14  or other diagnostic tools.

15      You know, it would be like Ford saying you have to

16  use a Ford-branded screwdriver to repair the car, and plaintiff

17  coming back and saying, well, you didn't use Ford-branded

18  screwdriver, so redo it, even if the repair had been done

19  properly with a regular screwdriver.

20      So what the manufacturer says, of course, it plays

21  into, you know, into everything that takes place, but what a

22  manufacturer says doesn't dictate the terms of the contract and

23  why they might be saying a particular diagnostic test and who

24  pays for a particular diagnostic test is not part of the

25  agreement here.  The agreement says damage, damage from a

1  covered collision.

2          THE COURT:  So whose obligation between the insurance

3  company and the customer, whose obligation is it to figure out

4  what the damage is?

5          MR. GOLDFINE:  Well, the obligation in the first part

6  is that the customer can present the damage to the vehicle,

7  but, you know, they will obtain the assistance of a body shop

8  to figure out what the damage is, and they'll present the

9  claim.  It's not a one-time shot.  I mean, there's different

10  steps that take place in a typical claim.  But if they don't

11  present any damage, there's no obligation for GEICO to pay or

12  to do its own investigation.

13          THE COURT:  Thank you.

14          Could we turn to the good faith and fair dealing

15  argument, Mr. Conable.

16          MR. CONABLE:  Yes, Your Honor.

17          THE COURT:  So that can hinge on an agreed common

18  purpose or justified expectation, right?

19          MR. CONABLE:  Yes, Your Honor.

20          THE COURT:  And you, I assume, by virtue of us being

21  here litigating this, agree that there's no agreed common

22  purpose?  GEICO doesn't agree, right?  So you're relying on a

23  justified expectation?

24          MR. CONABLE:  Yes, Your Honor.

25          THE COURT:  So do you agree that the justified

1   expectation can't actually add a term to the contract?

2          MR. CONABLE:  Yes.  Add or alter terms, explicit

3   terms of the contract.

4          THE COURT:  So to have this be satisfactory as a good

5   faith and fair dealing claim, it has to be a justified

6   expectation that is, as you say, part and parcel of or a part

7   of the promise that's already in the contract?

8          MR. CONABLE:  We say not inconsistent with the

9   promise that's already in the contract.  I don't read the good

10  faith and fair dealing cases quite as strongly as to say that

11  you have -- it's a term that exists within the contract that

12  can't be inconsistent with the other terms in the contract.

13         THE COURT:  And that's how you read good faith and

14  fair dealing?

15         MR. CONABLE:  It is, Your Honor.

16         THE COURT:  All right.  And so here I don't want to

17  put words in your mouth, but I guess your argument is that this

18  is not inconsistent with anything they've already promised to

19  do, and here we come back perhaps to this industry standard

20  idea?

21         MR. CONABLE:  Yes, Your Honor.

22         THE COURT:  That it's an expectation that's justified

23  for at least, at a minimum, owners of cars like your client's?

24         MR. CONABLE:  Yes, Your Honor.  And it's a little bit

25  in the nature of an alternative argument in this case, in that

1    we anticipated that they would say, aha, you know, our contract

2    doesn't say the words "diagnostic scan," it just says we'll pay

3    you for your loss.  And so as a matter of good faith and fair

4    dealing, as a matter of the insured's reasonable expectations

5    of the contract, it is reasonable for an insured to assume that

6    or to conclude from looking at this contract that the insurer

7    will be responsible for paying for the necessary steps to

8    determine what the loss is, and then to repair the loss.  It is

9    not reasonable to look at this agreement and to say we are

10   required to compensate you for loss but not for the process of

11   figuring out what the loss is.

12           And GEICO's lawyer said, as I think he has to, that

13   in some cases they do read this contract to require them to pay

14   for scans.  They do not draw the line --

15           THE COURT:  Actually, that's not what your opponent

16   said.  Your opponent said that sometimes they do pay for

17   diagnostics, but he specifically denied that they did so

18   because the contract required them to do so.

19           MR. CONABLE:  Well, then the implication of that is

20   that in some cases they make gratuitous diagnostic payments for

21   some reason specific to GEICO, not having to do with their

22   understanding of what the contract means.  I would suggest --

23           THE COURT:  Why is that?  Why is that troubling in

24   any way, they sometimes pay diagnostics?

25           MR. CONABLE:  Because it's factless.  Because their

1    argument here has to be that as a matter of law, we don't pay
2    for this.  As Your Honor suggested, it's because this contract
3    doesn't say we pay for diagnostics, GEICO doesn't pay for
4    diagnostics, except we know sometimes GEICO does pay for
5    diagnostics.  It creates two possibilities:  One, that in some
6    cases GEICO believes that -- possibility one, that GEICO
7    believes, and I think correctly, that in some circumstances the
8    time and labor necessary to figure out what the loss is and how
9    to fix it is part and parcel of covering the loss under this
10   contract; or the second possibility, as you've suggested, that
11   notwithstanding their belief that they're not required to pay
12   this, to pay for these -- to pay for any scanning under the
13   contract, nevertheless, sometimes they do it anyway.

14            Those are two possibilities.  One, if GEICO as a
15   matter of fact --

16            THE COURT:  So you're suggesting the second one is
17   fabulous?

18            MR. CONABLE:  I am, Your Honor.  But it's also
19   factual.

20            THE COURT:  Why wouldn't it be perfectly -- if you
21   have a $30 diagnostic test, then, you know, the insurance
22   company could easily just assume it's not worth the beef.

23            MR. CONABLE:  And perhaps the insurance company will
24   come forward with evidence at trial where they point to some
25   policy that they have that they don't sweat the details or

1  they're not worried about squeezing a nickel or they're

2  motivated in some cases by something other than profit.

3          But again, the argument here has to be that the plain

4  language of this contract doesn't require them to pay for any

5  scans, even scans that are necessary to ascertain the amount of

6  damage, to allow for damage to occur.

7          All I'm suggesting, Your Honor, is that once GEICO

8  admits, as it must, that it sometimes pays for scans, including

9  sometimes paying for electronic scans, it either has to embrace

10  the idea that sometimes this contract does provide for coverage

11  in those circumstances or make the factual argument that we're

12  wrong on the facts when we say they have a policy of paying for

13  some scans and not paying for others.  And that's -- this is a

14  motion to dismiss.  That's a factual question.

15          Back to good faith and fair dealing.  I got off of it

16  there for a minute.  Our point is that it is within the

17  reasonable expectations of the party that contracts with

18  someone who agrees to pay for loss to their vehicle following a

19  collision, that part of paying for that is paying for figuring

20  out what the loss is.

21          THE COURT:  Why?

22          MR. CONABLE:  Because it is -- because there's no

23  division in that process from the perspective of the customer.

24  Because when you take your car --

25          THE COURT:  Why isn't it perfectly reasonable to

1   contract with someone to pay for your loss, understanding that

2   it's on you to determine the loss?

3           MR. CONABLE:  Because there is no process, in

4   everyone's ordinary understanding of getting a car fixed, the

5   process of determining what's wrong with the car and the

6   process of fixing the car are not disparate, divisible events.

7   There is no circumstance in which someone who has had a serious

8   collision to a car ever believed that they have some

9   responsibility independent of the body shop doing their repair

10  to figure out what's wrong with the car.  It is -- fixing the

11  car and figuring out what's wrong with the car are not --

12          THE COURT:  Well, but that doesn't help much.  I

13  mean, sure, the person may think they've got to take it to a

14  body shop to figure out what's wrong and not figure it out

15  themselves.  They may take photos or whatever, but they

16  understand they probably got to take it to the body shop to

17  figure out what's wrong.

18          MR. CONABLE:  Yes, Your Honor.

19          THE COURT:  But why would it be irrational to assume

20  that one could contract for protection against loss,

21  understanding that that whole process, including taking it to a

22  body shop, is on the client, and then the insurance company

23  pays for the loss?

24          MR. CONABLE:  Well, the question is whether --

25  respectfully, I think the question is not whether it might be

1    rational for someone in some circumstance to form that belief,

2    but whether at the motion to dismiss stage, as a matter of law,

3    we can conclude that no reasonable person could have the

4    expectation, Mr. Hansen or anyone else would have the

5    expectation that fixing the car includes figuring out what's

6    wrong with the car.

7         THE COURT:  Well, I guess what I have right now is

8    your say-so, that it's a justified expectation if you buy a GMC

9    like this one that you would get your scans paid for.

10        MR. CONABLE:  We have our allegation to that effect

11   in the complaint.  So in the sense that that's my say-so at the

12   motion to dismiss stage, yes, Your Honor.

13        THE COURT:  The complaint alleges that it's a

14   justified expectation?

15        MR. CONABLE:  Paragraph 47 in the second claim for

16   relief:  "GEICO's policyholders have a reasonable

17   expectation" --

18        THE COURT:  Slow down, please.

19        MR. CONABLE:  Sorry.

20        "GEICO's policyholders have a reasonable expectation,

21   rooted in the plain language of the policy, that GEICO will

22   compensate them in an amount sufficient to obtain complete and

23   safe repairs.  However, GEICO's policy of denying pre- and

24   post-repair scans, in direct opposition to manufacturer and

25   industry recommendations, frustrates this reasonable

1    expectation."

2           THE COURT:  Thank you.

3           MR. GOLDFINE:  I'll be very short here.  I mean, I

4    think the operative language there that reflects the test in

5    Oregon, which is rooted in the plain language, and so the idea

6    that we're going to disregard the -- you know, the plain

7    language "damage," and the express limitation in "damage" to

8    read, candidly, a bunch of third parties' documents as to what

9    the terms are is inconsistent with the plain meaning.

10          THE COURT:  We're not relying on third parties to

11   tell us what the terms are, consistent or not with plain

12   meaning.  We're looking to third parties to decide what a

13   justified expectation is in terms of the good faith and fair

14   dealing theory.

15          MR. GOLDFINE:  But it still has to, as I understand

16   Oregon law -- and it's not inconsistent with other states'

17   law -- it has to be consistent with the language of the policy.

18   The operative language of the policy still is "damage to the

19   vehicle."

20          THE COURT:  How is paying for diagnostic tools to

21   determine damage inconsistent with the policy?

22          MR. GOLDFINE:  Because that's a choice of diagnostic

23   tools as opposed to just compensating for the damage itself.

24   And so --

25          THE COURT:  So you're saying if it imposes a new

1   financial obligation on the insurance company, it's

2   inconsistent with the express terms of the policy?

3            MR. GOLDFINE:  I would agree with that proposition.

4            THE COURT:  That wasn't a proposition, it was a

5   question.  I was asking if that's what you're saying.

6            MR. GOLDFINE:  I would agree with that.  I think

7   there's other -- I mean, I don't want to limit it simply to

8   that, but yes, I would agree with that.

9            THE COURT:  Assuming that's wrong, by what method do

10  I determine what a customer's justified expectations are?

11           MR. GOLDFINE:  Well, I think you have to start with,

12  even as alleged here, you have to start with the language of

13  the contract.  If the language of the contract uses a term, as

14  it does, "damage to the vehicle," you know, the justified

15  expectations are not going to be how you get the fix of the

16  vehicle, the techniques, the particular diagnostic tools.  The

17  insured has agreed and the insurer has agreed to pay for,

18  compensate for the damage minus the deductible.

19           THE COURT:  So you heard argument that the cat's out

20  of the bag, so to speak, and if GEICO -- if GEICO has, in fact,

21  acknowledged that it sometimes pays for diagnostic tools, it's

22  tough to say when it should or shouldn't, you know.  We at

23  least now have to litigate what is reasonable expectation and

24  what isn't.

25           MR. GOLDFINE:  Well, I guess I would take a step back

1    and, you know, assuming the truth of that allegation, just for

2    purposes of this argument here, the idea that we just pay for a

3    diagnostic tool, as the Court noted, could be gratuitous, it

4    could be for a variety of reasons, and it could be set on the

5    particular circumstances of a particular car.  But the idea

6    here that a plaintiff can come to court and say, "Well, there

7    was damage to my rear bumper, I accidentally bumped into

8    something at the supermarket," but not allege that that damage

9    hasn't been compensated -- which is not in their complaint --

10   is not, you know, a justification for opening up a whole

11   panoply of particular circumstances.

12          The contract says, the policy says compensation for

13   damage to the vehicle caused by a covered collision.  There's

14   not an allegation here that --

15          THE COURT:  Sure.  We're not talking about the

16   contract.  We're talking about good faith and fair dealing.  So

17   that's why I'm not focusing directly on the terms of the

18   contract except to the degree you suggest that this good faith

19   and fair dealing theory contravenes the terms of the contract.

20   I get that point.

21          MR. GOLDFINE:  And it stems beyond the -- the term

22   "damage to the vehicle," it extends substantially beyond that.

23          THE COURT:  Thank you.

24          I'll take a brief recess.

25          THE CLERK:  Court is in recess.

```
 1            (A recess is then taken.)

 2            THE COURT:  All right.  Thank you for your briefing

 3   and oral argument in this case.

 4            I do find that the complaint in this case fails to

 5   state a claim.  For breach of contract, I think it's a fairly

 6   straightforward analysis.  Some loss or damage that wasn't paid

 7   for has to be alleged.  And the contract does not on its

 8   express terms promise any more than that.  It doesn't promise

 9   to pay for diagnostics, and external events such as

10   manufacturer's requirements can't really plug much into the

11   contractual analysis.

12            Certainly, in context, the terms itself in context I

13   don't think mean much different than they do just on their

14   simple expression of the words.  It doesn't really, as I look

15   at it in context, mean anything other than to pay for the loss

16   or damages.  And so without that, I don't believe that a claim

17   is properly stated.

18            Most of the argument I heard today really gets at the

19   reasonable expectations of the parties for a good faith and

20   fair dealing claim.  I mean, the manufacturer's requirements or

21   ASA requirements, for example, might go a long way towards

22   establishing the reasonable expectations of the parties.  But

23   that's actually not really necessary here because I find that

24   the complaint itself at the motion to dismiss stage adequately

25   states that it's the reasonable expectations of the parties in
```

1   this kind of case to get this kind of diagnostic tool.  You

2   don't really need much more than that at this stage.

3           But what you also need for good faith and fair

4   dealing is the violation you allege, the fair dealing that you

5   say did not take place is essentially a performance that you

6   think good faith and fair dealing requires, but it has to be a

7   performative act that's not inconsistent with the terms of the

8   contract.  Even if it is a reasonable expectation of the

9   parties, it still has to not add a term to the contract.

10          And, of course, one good way to think of that is does

11  it require in a contract like this one to pay for something

12  that the contract never promised to pay for.  And here I think

13  it is a new term, inconsistent with the express terms of the

14  contract.  I think read as a whole, when you promise to pay for

15  certain things, then good faith and fair dealing can't get you

16  to promise to pay for more than the things you said you'd pay

17  for.  That's an inconsistency when the nature of the contract

18  is fundamentally a promise to pay.

19          And so, for that reason, I find that there is also no

20  claim stated on good faith and fair dealing, and neither of

21  those, I think, are curable.  I mean, if a complaint alleged a

22  loss that wasn't paid for, we'd have an entirely different

23  case, and one that probably would have to be, under the

24  contract itself -- some other steps would have to take place

25  before we could even be in court.  And certainly the reasonable

1    expectation of the party prong of good faith and fair dealing

2    could be cured, but I've already said it doesn't need to be

3    cured.  There's enough there.

4              And the adding -- the problem that it adds a new

5    term, required payment adds a new term isn't curable, in my

6    view, so I grant the motion here for failure to state a claim

7    on both theories with prejudice.

8              Thank you all.  We'll be in recess.

9              THE CLERK:  This court is in recess.

10             (Proceedings concluded.)

1

2                              --o0o--

3

4          I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9

10   /s/Bonita J. Shumway                    April 9, 2018
     _____            _____
11   BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. BROOKSBY: [1]**
3/7
**MR. CONABLE: [40]**
**MR. FISHER: [1]** 3/11
**MR. GOLDFINE: [21]**
3/9 12/24 13/10 13/16
13/20 14/1 14/11 14/21
15/14 15/21 16/4 16/7
17/4 24/2 24/14 24/21
25/2 25/5 25/10 25/24
26/20
**MR. OLSON: [1]** 3/14
**THE CLERK: [3]** 3/2
26/24 29/8
**THE COURT: [61]**

**$**
**$30 [1]** 20/21

**'**
**'57 [1]** 12/2

**-**
**--o0o [1]** 30/2

**/**
**/s/Bonita [1]** 30/9

**1**
**10 [1]** 4/23
**10,000 [1]** 11/10
**100 [1]** 15/17
**1000 [1]** 2/19
**1020 [1]** 2/14
**1200 [1]** 2/10
**1600 [1]** 2/5
**1980 [2]** 8/15 11/23

**2**
**201 [1]** 2/10
**2018 [3]** 1/7 3/2 30/9

**3**
**301 [1]** 2/19
**326-8188 [1]** 2/20
**3:17-cv-01986-MO [1]**
1/5
**3:17-cv-1986-MO [1]**
3/4

**4**
**400 [1]** 2/14
**47 [1]** 23/15

**5**
**503 [1]** 2/20

**8**
**8188 [1]** 2/20
**85004 [1]** 2/11
**888 [1]** 2/5

**9**
**97204 [2]** 2/6 2/19
**97205 [1]** 2/14

**A**
**able [2]** 7/6 7/23
**about [14]** 3/18 5/10
7/11 8/1 9/19 10/11
12/2 13/9 13/16 15/2
15/13 21/1 26/15 26/16
**above [1]** 30/6
**above-entitled [1]** 30/6
**absence [1]** 13/6
**absolutely [1]** 16/5
**accident [1]** 4/11
**accidental [1]** 3/24
**accidentally [1]** 26/7
**acknowledged [1]**
25/21
**act [1]** 28/7
**actually [3]** 18/1 19/15
27/23
**add [3]** 18/1 18/2 28/9

**adding [1]** 29/4
**adds [2]** 29/4 29/5
**adequately [1]** 27/24
**admits [1]** 21/8
**afternoon [1]** 3/13
**again [1]** 21/3
**against [1]** 22/20
**ago [2]** 10/23 11/8
**agree [14]** 4/10 4/20
4/20 5/20 6/10 7/1 8/3
10/1 17/21 17/22 17/25
25/3 25/6 25/8
**agreed [4]** 17/17 17/21
25/17 25/17
**agreement [4]** 13/2
16/25 16/25 19/9
**agrees [1]** 21/18
**aha [1]** 19/1
**all [13]** 1/3 3/17 3/21
4/20 11/8 12/19 12/24
14/1 14/14 18/16 21/7
27/2 29/8
**allegation [5]** 9/20 9/21
23/10 26/1 26/14
**allegations [3]** 8/20
13/6 14/3
**allege [2]** 26/8 28/4
**alleged [7]** 8/20 13/8
13/14 14/12 25/12 27/7
28/21
**alleges [1]** 23/13
**allow [2]** 11/6 21/6
**already [4]** 18/7 18/9
18/18 29/2
**also [3]** 20/18 28/3
28/19
**alter [1]** 18/2
**alternative [1]** 18/25
**although [2]** 10/1 10/7
**am [1]** 20/18
**amount [7]** 5/8 5/19
5/22 6/1 6/2 21/5 23/22

**A**

**analysis [2]**  27/6 27/11
**announce [1]**  10/10
**anticipated [1]**  19/1
**any [14]**  5/14 8/14
12/15 13/19 14/10
14/10 14/10 14/13
15/20 17/11 19/24
20/12 21/4 27/8
**anybody [1]**  7/24
**anyone [1]**  23/4
**anything [5]**  5/16 10/4
13/4 18/18 27/15
**anyway [2]**  8/19 20/13
**APPEARANCES [1]**
2/2
**applied [1]**  12/18
**applies [1]**  9/21
**apply [1]**  12/17
**April [3]**  1/7 3/2 30/9
**are [21]**  4/4 6/12 6/12
6/13 11/22 11/25 12/12
12/23 14/6 15/16 16/10
19/9 20/14 21/5 22/6
22/11 24/9 24/11 25/10
25/15 28/21
**aren't [1]**  4/19
**argue [1]**  9/18
**argument [18]**  1/16 3/4
3/18 4/2 5/11 5/24 7/14
10/6 17/15 18/17 18/25
20/1 21/3 21/11 25/19
26/2 27/3 27/18
**arguments [1]**  8/2
**Aries [3]**  8/15 9/12
11/24
**articles [2]**  11/11 11/11
**articulate [1]**  13/1
**articulated [1]**  11/20
**as [42]**
**ASA [11]**  6/18 8/22

8/25 9/23 10/12 10/13
10/18 11/1 11/25 12/11
27/21
**ascertain [1]**  21/5
**ascertaining [2]**  5/6
5/18
**ask [1]**  4/18
**asking [5]**  8/1 14/17
15/1 15/19 25/5
**asks [1]**  12/20
**assistance [1]**  17/7
**assume [4]**  17/20 19/5
20/22 22/19
**assuming [3]**  6/5 25/9
26/1
**at [23]**  4/3 7/24 9/10
9/11 9/18 11/3 11/8
12/6 12/15 15/7 18/23
18/23 19/6 19/9 20/24
23/2 23/11 25/22 26/8
27/15 27/18 27/24 28/2
**attempt [1]**  13/1
**attempting [1]**  6/7
**Ave [1]**  2/19
**Avenue [1]**  2/5
**away [1]**  3/19
**AZ [1]**  2/11

**B**

**back [5]**  14/7 16/17
18/19 21/15 25/25
**bag [1]**  25/20
**be [42]**
**because [20]**  3/25 5/16
7/9 7/21 7/24 9/14 9/20
10/9 15/10 16/6 19/18
19/25 19/25 20/2 21/22
21/22 21/24 22/3 24/22
27/23
**becomes [1]**  5/3
**beef [1]**  20/22
**been [6]**  3/25 3/25 13/7

14/15 16/18 26/9
**before [4]**  1/18 4/15
15/12 28/25
**behalf [1]**  1/3
**being [4]**  3/17 8/22
8/23 17/20
**belief [2]**  20/11 23/1
**believe [3]**  12/5 12/7
27/16
**believed [1]**  22/8
**believes [2]**  20/6 20/7
**below [1]**  30/4
**better [1]**  4/7
**between [4]**  10/3 13/6
14/2 17/2
**beyond [3]**  12/3 26/21
26/22
**bind [1]**  16/9
**bit [1]**  18/24
**body [8]**  6/11 6/24 11/6
17/7 22/9 22/14 22/16
22/22
**Bonita [3]**  2/18 30/9
30/10
**both [1]**  29/7
**branded [2]**  16/16
16/17
**breach [3]**  3/22 14/4
27/5
**brief [2]**  4/3 26/24
**briefing [2]**  3/22 27/2
**broken [4]**  3/23 3/25
5/15 5/15
**Brooksby [3]**  2/13 2/13
3/8
**bumped [1]**  26/7
**bumper [5]**  13/6 13/13
13/14 13/16 26/7
**bunch [1]**  24/8
**but [36]**
**buy [1]**  23/8

# C

**can [10]** 3/6 7/24 9/18 12/17 15/4 15/5 17/6 17/17 23/3 26/6

**can't [7]** 12/3 14/14 16/9 18/1 18/12 27/10 28/15

**candidly [1]** 24/8

**car [34]**

**car's [1]** 12/22

**cars [4]** 7/11 9/22 12/9 18/23

**case [18]** 1/5 3/4 6/3 8/20 8/20 9/20 9/21 10/10 12/7 13/13 13/23 14/10 14/18 18/25 27/3 27/4 28/1 28/23

**cases [8]** 10/9 10/11 10/13 18/10 19/13 19/20 20/6 21/2

**cat's [1]** 25/19

**categorically [1]** 6/16

**cause [1]** 30/6

**caused [2]** 13/24 26/13

**certain [3]** 11/3 16/2 28/15

**certainly [2]** 27/12 28/25

**certification [2]** 12/6 12/15

**certified [1]** 30/7

**certify [1]** 30/4

**change [1]** 11/7

**cherry [1]** 8/25

**Chevy [1]** 12/2

**CHIEF [1]** 1/19

**choice [1]** 24/22

**Christie [1]** 2/10

**circumstance [2]** 22/7 23/1

**circumstances [6]**

14/15 14/23 20/7 21/11 26/5 26/11

**claim [11]** 3/19 14/4 17/9 17/10 18/5 23/15 27/5 27/16 27/20 28/20 29/6

**claimants [1]** 12/17

**class [3]** 9/22 12/6 12/14

**client [2]** 6/3 22/22

**client's [1]** 18/23

**coin [1]** 10/6

**collision [5]** 13/24 17/1 21/19 22/8 26/13

**come [4]** 8/15 18/19 20/24 26/6

**coming [1]** 16/17

**commit [1]** 8/4

**common [2]** 17/17 17/21

**company [13]** 1/7 3/5 3/11 5/25 6/5 6/8 14/20 15/3 17/3 20/22 20/23 22/22 25/1

**compensate [6]** 13/13 15/23 15/24 19/10 23/22 25/18

**compensated [3]** 13/7 14/14 26/9

**compensating [1]** 24/23

**compensation [1]** 26/12

**complaint [7]** 4/24 23/11 23/13 26/9 27/4 27/24 28/21

**complete [2]** 4/13 23/22

**computer [2]** 8/18 12/3

**Conable [5]** 2/4 3/14 4/4 9/25 17/15

**concern [1]** 11/7

**conclude [2]** 19/6 23/3

**concluded [1]** 29/10

**condition [13]** 4/14 5/6 8/7 8/9 8/10 10/25 11/2 11/5 11/13 11/19 12/13 13/10 13/12

**conditions [1]** 7/10

**conduct [3]** 5/13 7/12 11/2

**conducting [1]** 8/9

**confidently [1]** 12/14

**conformed [1]** 30/7

**consistent [2]** 24/11 24/17

**context [3]** 27/12 27/12 27/15

**contract [62]**

**contracts [1]** 21/17

**contractual [1]** 27/11

**contractually [1]** 7/7

**contravenes [1]** 26/19

**corporation [1]** 1/8

**correct [4]** 4/22 5/2 6/9 30/5

**correctly [1]** 20/7

**cost [1]** 14/25

**could [12]** 13/21 13/22 15/18 17/14 20/22 22/20 23/3 26/3 26/4 26/4 28/25 29/2

**Counsel [1]** 3/6

**course [2]** 16/20 28/10

**court [12]** 1/1 1/19 2/18 12/20 13/2 14/7 26/3 26/6 26/25 28/25 29/9 30/11

**Courthouse [1]** 2/18

**coverage [1]** 21/10

**covered [2]** 17/1 26/13

**covering [1]** 20/9

**create [1]** 11/12

**creates [1]** 20/5

## C

**CRR [2]** 2/18 30/10
**CSR [2]** 2/18 30/10
**curable [2]** 28/21 29/5
**cured [2]** 29/2 29/3
**customer [3]** 17/3 17/6
21/23
**customer's [1]** 25/10
**cv [2]** 1/5 3/4

## D

**damage [52]**
**damages [1]** 27/16
**Dan [2]** 2/9 3/10
**DATE [1]** 30/10
**dealing [16]** 17/14 18/5
18/10 18/14 19/4 21/15
24/14 26/16 26/19
27/20 28/4 28/4 28/6
28/15 28/20 29/1
**decide [2]** 10/10 24/12
**declarations [2]** 10/16
11/10
**deductible [2]** 15/24
25/18
**defendant [5]** 1/9 2/9
3/9 3/10 3/12
**defense [1]** 3/18
**degree [1]** 26/18
**demand [1]** 14/3
**denied [1]** 19/17
**deny [2]** 12/5 12/7
**denying [1]** 23/23
**depends [1]** 14/22
**details [1]** 20/25
**determine [7]** 6/24
7/16 11/1 19/8 22/2
24/21 25/10
**determining [4]** 11/4
11/22 12/12 22/5
**diagnostic [24]** 6/9 8/6

9/17 13/7 14/6 14/11
14/19 14/20 14/24 15/6
15/21 16/2 16/14 16/23
16/24 19/2 19/20 20/21
24/20 24/22 25/16
25/21 26/3 28/1
**diagnostics [11]** 7/5
7/16 8/4 9/23 15/9
19/17 19/24 20/3 20/4
20/5 27/9
**dictate [1]** 16/22
**did [3]** 6/12 19/17 28/5
**didn't [5]** 4/9 4/10 16/6
16/8 16/17
**different [8]** 6/3 14/15
15/17 16/11 16/12 17/9
27/13 28/22
**difficult [1]** 6/22
**direct [2]** 3/24 23/24
**directly [1]** 26/17
**disconnect [2]** 13/5
14/2
**discuss [1]** 13/12
**dismiss [9]** 11/21 12/5
12/7 12/14 12/19 21/14
23/2 23/12 27/24
**disparate [1]** 22/6
**dispute [1]** 12/1
**disregard [1]** 24/6
**DISTRICT [4]** 1/1 1/2
1/19 2/18
**divide [1]** 9/15
**divides [1]** 9/12
**divisible [1]** 22/6
**division [1]** 21/23
**do [31]**
**documents [1]** 24/8
**Dodge [3]** 8/15 9/12
11/23
**does [12]** 8/5 9/2 10/21
13/9 13/11 14/20 15/20
20/4 21/10 25/14 27/7

28/10
**doesn't [20]** 8/4 9/24
10/4 10/19 11/7 12/2
12/21 13/16 14/25
15/22 16/22 17/22 19/2
20/3 20/3 21/4 22/12
27/8 27/14 29/2
**doing [4]** 6/15 14/24
14/25 22/9
**don't [20]** 5/14 7/20 9/1
9/19 9/21 12/5 12/7
14/16 15/9 15/11 15/13
17/10 18/9 18/16 20/1
20/25 25/7 27/13 27/16
28/2
**done [3]** 6/3 10/13
16/18
**down [1]** 23/18
**draw [2]** 15/4 19/14
**duty [2]** 6/8 6/14

## E

**easily [1]** 20/22
**East [1]** 2/10
**effect [1]** 23/10
**efforts [1]** 12/16
**either [1]** 21/9
**electronic [3]** 4/11 11/3
21/9
**elements [2]** 6/9 6/12
**else [3]** 7/25 13/4 23/4
**embrace [1]** 21/9
**EMPLOYEES [3]** 1/7
3/5 3/11
**end [1]** 11/16
**ended [1]** 5/16
**enough [1]** 29/3
**entirely [1]** 28/22
**entitled [1]** 30/6
**enumerated [1]** 11/3
**essential [1]** 15/11
**essentially [1]** 28/5

**E**

**establishing [1]** 27/22
**estimate [2]** 14/25
14/25
**even [7]** 12/21 16/1
16/18 21/5 25/12 28/8
28/25
**events [2]** 22/6 27/9
**ever [1]** 22/8
**everyone's [1]** 22/4
**everything [1]** 16/21
**evidence [1]** 20/24
**example [4]** 5/7 8/14
13/22 27/21
**examples [1]** 15/16
**except [2]** 20/4 26/18
**excuse [1]** 8/16
**exists [2]** 15/25 18/11
**expanse [1]** 12/16
**expect [1]** 12/14
**expectation [17]** 11/13
17/18 17/23 18/1 18/6
18/22 23/4 23/5 23/8
23/14 23/17 23/20 24/1
24/13 25/23 28/8 29/1
**expectations [7]** 19/4
21/17 25/10 25/15
27/19 27/22 27/25
**expensive [1]** 14/19
**expert [2]** 10/14 11/10
**explanations [1]** 16/11
**explicit [1]** 18/2
**express [4]** 24/7 25/2
27/8 28/13
**expressed [3]** 11/9
11/9 11/10
**expression [1]** 27/14
**expressly [1]** 10/19
**extend [1]** 12/4
**extends [1]** 26/22
**extent [1]** 14/11

**external [3]** 10/17
11/12 27/9

**F**

**fabulous [1]** 20/17
**fact [6]** 11/22 12/1
13/11 16/11 20/15
25/20
**factless [1]** 19/25
**facts [2]** 11/17 21/12
**factual [3]** 20/19 21/11
21/14
**fails [1]** 27/4
**failure [2]** 3/19 29/6
**fair [16]** 17/14 18/5
18/10 18/14 19/3 21/15
24/13 26/16 26/19
27/20 28/3 28/4 28/6
28/15 28/20 29/1
**fairly [3]** 4/2 4/3 27/5
**faith [15]** 17/14 18/5
18/10 18/13 19/3 21/15
24/13 26/16 26/18
27/19 28/3 28/6 28/15
28/20 29/1
**fall [1]** 9/22
**far [1]** 10/21
**fender [1]** 5/9
**Fifth [1]** 2/5
**figure [10]** 5/25 6/19
10/8 17/3 17/8 20/8
22/10 22/14 22/14
22/17
**figuring [4]** 19/11
21/19 22/11 23/5
**financial [1]** 25/1
**find [3]** 27/4 27/23
28/19
**fine [1]** 5/20
**first [2]** 9/1 17/5
**Fisher [2]** 2/9 3/12
**fix [2]** 20/9 25/15

**fixed [2]** 6/24 22/4
**fixing [3]** 22/6 22/10
23/5
**focus [2]** 3/18 5/10
**focusing [2]** 15/20
26/17
**following [3]** 6/17 6/18
21/18
**Ford [3]** 16/15 16/16
16/17
**Ford-branded [2]**
16/16 16/17
**foregoing [1]** 30/4
**form [1]** 23/1
**forth [3]** 4/2 14/4 14/6
**forward [1]** 20/24
**four [2]** 11/11 15/17
**frustrates [1]** 23/25
**full [1]** 6/13
**function [1]** 15/3
**fundamentally [2]** 3/23
28/18

**G**

**GEICO [23]** 5/8 5/25
7/9 8/17 8/17 9/3 9/4
12/16 12/21 13/7 16/9
17/11 17/22 19/21 20/3
20/4 20/6 20/6 20/14
21/7 23/21 25/20 25/20
**GEICO's [4]** 19/12
23/16 23/20 23/23
**get [7]** 8/2 9/11 23/9
25/15 26/20 28/1 28/15
**gets [1]** 27/18
**getting [2]** 9/10 22/4
**GM [2]** 9/9 9/9
**GMC [2]** 9/12 23/8
**go [5]** 5/25 9/7 10/21
14/18 27/21
**going [11]** 4/4 6/11
6/20 8/18 10/9 10/11

## G

**going...** [5]  11/22 13/15 14/14 24/6 25/15
**Goldfine** [2]  2/9 3/10
**gone** [1]  7/25
**good** [17]  3/13 17/14 18/4 18/9 18/13 19/3 21/15 24/13 26/16 26/18 27/19 28/3 28/6 28/10 28/15 28/20 29/1
**got** [4]  10/1 21/15 22/13 22/16
**GOVERNMENT** [3]  1/7 3/4 3/11
**grant** [1]  29/6
**gratuitous** [2]  19/20 26/3
**group** [1]  9/22
**guess** [4]  9/10 18/17 23/7 25/25

## H

**had** [5]  5/8 6/3 14/18 16/18 22/7
**hand** [1]  6/23
**HANSEN** [3]  1/3 3/4 23/4
**Hansen's** [5]  8/21 9/20 12/10 12/10 12/22
**happy** [1]  4/5
**has** [18]  8/22 8/23 10/2 15/3 18/5 19/12 20/1 21/3 21/9 22/7 24/15 24/17 25/17 25/17 25/20 27/7 28/6 28/9
**hasn't** [4]  3/25 13/7 14/13 26/9
**have** [37]
**having** [1]  19/21
**he** [2]  19/12 19/17
**heard** [3]  15/12 25/19

27/18
**help** [2]  4/7 22/12
**her** [1]  6/24
**here** [30]  3/17 3/23 4/19 5/7 5/25 6/2 6/12 6/15 7/3 10/3 10/12 11/21 12/2 13/8 15/14 15/20 16/25 17/21 18/16 18/19 20/1 21/3 24/3 25/12 26/2 26/6 26/14 27/23 28/12 29/6
**here's** [2]  5/21 6/4
**himself** [1]  1/3
**hinge** [1]  17/17
**his** [1]  6/23
**Honor** [24]  3/3 3/8 3/13 3/16 4/5 4/22 5/2 6/10 8/15 8/16 11/20 12/8 12/25 17/16 17/19 17/24 18/15 18/21 18/24 20/2 20/18 21/7 22/18 23/12
**HONORABLE** [1]  1/18
**hood** [2]  5/9 15/8
**how** [9]  5/4 6/19 6/19 9/2 10/21 18/13 20/8 24/20 25/15
**However** [1]  23/23
**hypothetical** [1]  15/16

## I

**I'd** [4]  3/18 4/5 8/17 8/19
**I'll** [3]  8/2 24/3 26/24
**I'm** [19]  5/19 6/2 8/1 9/10 9/11 9/25 10/1 10/8 10/9 10/20 10/20 10/22 12/1 12/19 14/17 15/1 15/19 21/7 26/17
**I've** [1]  29/2
**Ian** [2]  2/9 3/12
**idea** [8]  4/16 4/19 16/1

18/20 21/10 24/5 26/2 26/5
**identified** [4]  3/25 13/2 14/7 14/13
**if** [31]
**implication** [1]  19/19
**import** [1]  10/18
**important** [2]  8/13 10/17
**imposes** [1]  24/25
**in** [83]
**includes** [1]  23/5
**including** [2]  21/8 22/21
**inconsistency** [1] 28/17
**inconsistent** [9]  18/8 18/12 18/18 24/9 24/16 24/21 25/2 28/7 28/13
**independent** [1]  22/9
**indivisibly** [1]  5/17
**industry** [4]  10/15 11/21 18/19 23/25
**inherent** [1]  11/22
**initially** [1]  4/3
**insurance** [13]  1/7 3/5 3/11 5/25 6/5 6/8 14/20 15/2 17/2 20/21 20/23 22/22 25/1
**insured** [11]  5/21 5/23 6/1 6/10 6/23 7/5 8/12 10/14 14/18 19/5 25/17
**insured's** [3]  6/11 7/2 19/4
**insurer** [6]  5/19 5/19 6/15 7/2 19/6 25/17
**insurer's** [2]  6/13 7/4
**into** [5]  10/18 16/21 16/21 26/7 27/10
**investigation** [1]  17/12
**irrational** [1]  22/19
**is** [124]

## I

**isn't [6]** 5/21 5/23 6/1
21/25 25/24 29/5
**issue [3]** 10/23 12/1
12/8
**it [91]**
**it's [34]**
**item [1]** 14/12
**its [3]** 12/18 17/12 27/7
**itself [4]** 24/23 27/12
27/24 28/24

## J

**jail [1]** 9/7
**journal [1]** 11/11
**JUDGE [1]** 1/19
**judgment [2]** 12/6
12/15
**just [17]** 6/8 7/13 8/1
8/12 10/9 10/20 11/8
14/10 14/17 15/9 16/6
19/2 20/22 24/23 26/1
26/2 27/13
**justiciability [1]** 3/20
**justification [1]** 26/10
**justified [10]** 17/18
17/23 17/25 18/5 18/22
23/8 23/14 24/13 25/10
25/14

## K

**kept [1]** 11/4
**kind [2]** 28/1 28/1
**knew [1]** 6/4
**know [19]** 9/1 9/13
10/17 11/12 14/5 15/4
15/6 15/13 16/15 16/21
17/7 19/1 20/4 20/21
24/6 25/14 25/22 26/1
26/10

## L

**labor [2]** 5/8 20/8
**language [16]** 4/17
4/22 4/23 13/18 13/25
15/20 15/22 21/4 23/21
24/4 24/5 24/7 24/17
24/18 25/12 25/13
**law [5]** 12/20 20/1 23/2
24/16 24/17
**lawyer [1]** 19/12
**learn [2]** 14/11 15/11
**least [5]** 4/3 9/18 11/3
18/23 25/23
**leg [2]** 5/15 5/15
**legit [2]** 6/5 10/20
**LEIF [1]** 1/3
**less [1]** 14/19
**let [3]** 10/22 13/1 14/7
**Lewis [1]** 2/10
**lift [1]** 5/9
**like [12]** 3/18 5/14 8/17
8/19 8/21 9/15 12/22
14/18 16/15 18/23 23/9
28/11
**limit [1]** 25/7
**limitation [1]** 24/7
**line [1]** 19/14
**lines [1]** 10/3
**litigate [1]** 25/23
**litigating [1]** 17/21
**little [1]** 18/24
**LLP [2]** 2/5 2/10
**long [1]** 27/21
**look [5]** 5/9 7/24 15/7
19/9 27/14
**looking [2]** 19/6 24/12
**lose [1]** 7/20
**loss [46]**
**lost [2]** 7/23 7/25

## M

**made [1]** 10/23
**make [4]** 7/6 12/16
19/20 21/11
**makes [2]** 9/17 10/8
**mandatorily [2]** 8/23
9/2
**mandatory [3]** 4/10
5/13 7/11
**manufacturer [17]** 5/12
8/8 8/11 8/24 9/2 9/4
9/5 9/14 9/16 9/24
10/25 11/25 12/11
12/22 16/20 16/22
23/24
**manufacturer's [3]**
6/18 27/10 27/20
**manufacturers [6]** 7/10
9/15 10/18 11/9 16/2
16/9
**Maryland [1]** 1/7
**matter [6]** 12/20 19/3
19/4 20/1 20/15 23/2
**may [4]** 9/22 15/3
22/13 22/15
**maybe [1]** 15/17
**me [7]** 4/7 5/20 8/16
9/24 10/22 13/1 14/7
**mean [16]** 6/2 7/7 9/1
9/2 9/18 10/17 11/11
13/21 17/9 22/13 24/3
25/7 27/13 27/15 27/20
28/21
**meaning [2]** 24/9 24/12
**means [2]** 11/8 19/22
**measure [2]** 5/10 15/20
**mercifully [1]** 4/2
**met [1]** 4/18
**method [1]** 25/9
**MICHAEL [1]** 1/18
**might [6]** 5/16 11/14

## M

**might...** [4]  15/8 16/23 22/25 27/21
**minimum** [1]  18/23
**minus** [2]  15/23 25/18
**minute** [1]  21/16
**MO** [2]  1/5 3/4
**moment** [3]  3/19 10/23 11/8
**more** [6]  6/4 14/19 15/3 27/8 28/2 28/16
**MOSMAN** [1]  1/18
**Most** [1]  27/18
**motion** [10]  11/21 12/5 12/7 12/13 12/19 21/14 23/2 23/12 27/24 29/6
**motivated** [1]  21/2
**mouth** [1]  18/17
**move** [1]  4/15
**Mr** [6]  2/4 2/4 2/9 2/9 2/13 4/4
**Mr.** [8]  8/21 9/20 9/25 12/10 12/10 12/22 17/15 23/4
**Mr. Conable** [2]  9/25 17/15
**Mr. Hansen** [1]  23/4
**Mr. Hansen's** [5]  8/21 9/20 12/10 12/10 12/22
**much** [6]  4/20 7/1 22/12 27/10 27/13 28/2
**must** [8]  9/3 9/5 9/6 9/7 11/2 14/17 16/2 21/8
**must conduct** [1]  11/2
**my** [6]  5/22 11/23 14/16 23/11 26/7 29/5

## N

**name** [1]  3/6
**nature** [2]  18/25 28/17
**necessary** [15]  6/13

**need** [5]  7/20 9/23 28/2 28/3 29/2
**needs** [1]  6/24
**neither** [1]  28/20
**never** [3]  15/5 15/12 28/12
**nevertheless** [1]  20/13
**new** [4]  24/25 28/13 29/4 29/5
**newspaper** [1]  11/11
**nickel** [1]  21/1
**no** [16]  1/5 3/4 3/25 5/17 8/18 9/8 9/14 12/9 15/22 17/11 17/21 21/22 22/3 22/7 23/3 28/19
**not** [63]
**noted** [1]  26/3
**nothing** [3]  7/14 7/17 7/18
**notwithstanding** [1]  20/11
**now** [6]  4/7 8/1 11/9 15/13 23/7 25/23

## O

**o0o** [1]  30/2
**obligated** [3]  14/7 14/8 14/9
**obligation** [7]  7/2 7/5 17/2 17/3 17/5 17/11 25/1
**obtain** [2]  17/7 23/22
**occur** [3]  12/16 15/18 21/6
**occurred** [1]  15/24
**off** [2]  5/9 21/15
**Official** [1]  30/11

**okay** [1]  5/21
**Olson** [3]  2/4 2/13 3/15
**on** [38]
**once** [1]  21/7
**one** [14]  6/23 14/18 15/13 16/9 17/9 20/5 20/6 20/14 20/16 22/20 23/9 28/10 28/11 28/23
**one-time** [1]  17/9
**ones** [1]  15/11
**only** [2]  15/5 16/8
**open** [1]  15/8
**opening** [1]  26/10
**operative** [5]  13/4 13/18 13/24 24/4 24/18
**opponent** [3]  4/9 19/15 19/16
**opportunity** [1]  14/5
**opposed** [1]  24/23
**opposition** [1]  23/24
**or** [43]
**oral** [3]  1/16 3/3 27/3
**order** [1]  11/1
**ordinary** [1]  22/4
**OREGON** [4]  1/2 1/9 24/5 24/16
**original** [1]  30/6
**other** [13]  8/2 10/4 10/11 10/11 13/21 14/19 16/14 18/12 21/2 24/16 25/7 27/15 28/24
**others** [3]  1/3 15/10 21/13
**ought** [1]  8/13
**our** [7]  4/17 4/24 6/22 8/20 19/1 21/16 23/10
**Our allegations** [1]  8/20
**out** [18]  4/4 4/23 4/23 5/25 6/20 10/8 17/3 17/8 19/11 20/8 21/20 22/10 22/11 22/14

**O**

**out... [4]**  22/14 22/17 23/5 25/19
**outside [1]**  15/16
**own [2]**  14/10 17/12
**owners [1]**  18/23

**P**

**paid [5]**  4/1 5/1 23/9 27/6 28/22
**paint [1]**  7/19
**panoply [1]**  26/11
**paragraph [2]**  4/23 23/15
**parcel [8]**  4/12 5/5 5/14 7/13 10/5 16/3 18/6 20/9
**part [27]**  4/12 4/18 5/5 5/12 5/13 5/14 5/17 6/16 6/17 6/21 7/11 7/13 7/21 8/8 8/10 8/24 10/5 11/4 11/18 12/12 16/3 16/24 17/5 18/6 18/6 20/9 21/19
**particular [9]**  11/23 13/23 14/12 16/23 16/24 25/16 26/5 26/5 26/11
**parties [6]**  24/10 24/12 27/19 27/22 27/25 28/9
**parties' [1]**  24/8
**party [2]**  21/17 29/1
**Paul [2]**  2/4 3/13
**pay [58]**
**paying [11]**  15/6 15/7 15/8 16/3 19/7 21/9 21/12 21/13 21/19 21/19 24/20
**payment [1]**  29/5
**payments [1]**  19/20
**pays [4]**  16/24 21/8

**PC [1]**  2/13
**penumbra [2]**  10/6 16/11
**penumbral [1]**  10/24
**people [2]**  10/11 10/16
**perfectly [2]**  20/20 21/25
**perform [2]**  4/13 6/8
**performance [1]**  28/5
**performative [1]**  28/7
**perhaps [2]**  18/19 20/23
**person [2]**  22/13 23/3
**perspective [2]**  6/22 21/23
**pertinent [1]**  4/23
**Phoenix [1]**  2/11
**photos [2]**  15/7 22/15
**phrase [1]**  10/6
**pinnacle [3]**  11/15 11/24 12/10
**place [6]**  13/2 16/13 16/21 17/10 28/5 28/24
**plain [6]**  21/3 23/21 24/5 24/6 24/9 24/11
**plaintiff [8]**  1/5 2/4 3/14 3/15 14/8 14/9 16/16 26/6
**plaintiff's [1]**  11/10
**plays [1]**  16/20
**pleading [1]**  4/3
**please [2]**  3/6 23/18
**plug [1]**  27/10
**point [5]**  9/11 12/3 20/24 21/16 26/20
**policy [10]**  16/12 20/25 21/12 23/21 23/23 24/17 24/18 24/21 25/2 26/12
**policyholders [2]**  23/16 23/20

**Portland [4]**  1/9 2/6 2/14 2/19
**position [1]**  16/12
**possibilities [3]**  11/15 20/5 20/14
**possibility [3]**  5/11 20/6 20/10
**post [5]**  4/11 8/9 11/2 12/21 23/24
**post-accident [1]**  4/11
**post-repair [2]**  8/9 23/24
**potential [1]**  12/17
**practice [1]**  15/3
**pre [18]**  4/11 4/14 5/6 7/10 8/7 8/9 8/9 8/10 10/25 11/2 11/5 11/13 11/19 12/13 12/21 13/9 13/12 23/23
**pre-loss [13]**  4/14 5/6 7/10 8/7 8/9 8/10 10/25 11/5 11/13 11/19 12/13 13/9 13/12
**precise [1]**  13/15
**preferred [1]**  14/5
**prejudice [1]**  29/7
**present [4]**  7/2 17/6 17/8 17/11
**presentation [1]**  7/6
**presented [1]**  15/25
**presenting [1]**  6/2
**pressing [1]**  9/25
**principal [1]**  3/21
**principle [4]**  9/12 10/12 10/21 11/17
**probably [2]**  22/16 28/23
**problem [1]**  29/4
**proceedings [3]**  1/17 29/10 30/5
**process [9]**  6/17 6/17 12/12 19/10 21/23 22/3

**P**

**process... [3]** 22/5 22/6 22/21

**profit [1]** 21/2

**promise [19]** 3/23 3/23 10/4 11/5 13/19 15/4 15/5 15/5 15/21 15/22 16/6 16/8 18/7 18/9 27/8 27/8 28/14 28/16 28/18

**promised [7]** 10/7 10/24 10/24 13/23 15/3 18/18 28/12

**promises [2]** 4/8 15/23

**prong [1]** 29/1

**properly [2]** 16/19 27/17

**proposition [2]** 25/3 25/4

**protection [1]** 22/20

**provide [1]** 21/10

**pull [1]** 5/9

**purpose [2]** 17/18 17/22

**purposes [2]** 12/13 26/2

**put [2]** 4/2 18/17

**puts [1]** 10/14

**pyramid [1]** 11/15

**Q**

**question [9]** 5/7 9/8 9/24 14/16 15/1 21/14 22/24 22/25 25/5

**questions [2]** 9/11 11/22

**quite [2]** 14/16 18/10

**quotidian [1]** 14/20

**R**

**raised [1]** 11/8

**rational [1]** 23/1

**ray [2]** 5/15 5/16

**read [6]** 10/3 18/9 18/13 19/13 24/8 28/14

**really [8]** 6/10 8/12 14/22 27/10 27/14 27/18 27/23 28/2

**rear [1]** 26/7

**reason [4]** 9/25 15/1 19/21 28/19

**reasonable [15]** 19/4 19/5 19/9 21/17 21/25 23/3 23/16 23/20 23/25 25/23 27/19 27/22 27/25 28/8 28/25

**reasons [2]** 16/11 26/4

**recess [5]** 26/24 26/25 27/1 29/8 29/9

**recommendations [2]** 6/19 23/25

**record [2]** 3/7 30/5

**redo [1]** 16/18

**redressability [1]** 3/20

**refer [1]** 11/15

**referring [2]** 4/19 11/12

**reflects [1]** 24/4

**Regardless [1]** 8/14

**regular [1]** 16/19

**reject [1]** 16/1

**relief [1]** 23/16

**rely [1]** 11/14

**relying [3]** 11/18 17/22 24/10

**remark [1]** 10/23

**repair [22]** 4/12 4/13 4/20 5/17 6/9 6/13 6/16 6/17 6/19 7/12 8/6 8/9 8/25 9/5 9/9 13/4 16/3 16/16 16/18 19/8 22/9 23/24

**repairing [5]** 5/5 5/12 5/13 8/8 8/10

**repairs [2]** 4/16 23/23

**REPORTER [2]** 2/18 30/11

**require [4]** 12/21 19/13 21/4 28/11

**required [13]** 5/8 8/22 8/24 9/2 11/16 11/25 12/8 12/12 12/23 19/10 19/18 20/11 29/5

**requirements [4]** 6/18 27/10 27/20 27/21

**requires [4]** 4/12 7/9 11/13 28/6

**respect [5]** 9/19 11/3 11/23 12/9 16/13

**respectfully [1]** 22/25

**responsibility [2]** 6/23 22/9

**responsible [1]** 19/7

**restore [1]** 7/10

**restoring [1]** 11/5

**return [4]** 4/13 10/24 11/13 11/19

**reveal [1]** 5/11

**right [11]** 4/21 6/6 7/14 8/1 12/24 14/1 17/18 17/22 18/16 23/7 27/2

**RMR [2]** 2/18 30/10

**Roca [1]** 2/10

**Room [1]** 2/19

**rooted [2]** 23/21 24/5

**Rothgerber [1]** 2/10

**rule [1]** 10/10

**rules [1]** 10/13

**ruling [1]** 12/8

**S**

**S.W [3]** 2/5 2/14 2/19

**safe [1]** 23/23

**said [7]** 6/4 11/24 19/12 19/16 19/16 28/16 29/2

**same [1]** 11/8

# S

**satisfactory [1]** 18/4
**say [34]**
**say-so [2]** 23/8 23/11
**saying [15]** 4/25 5/14
6/11 6/15 7/11 8/11
8/12 10/5 10/20 12/19
16/15 16/17 16/23
24/25 25/5
**says [22]** 5/12 7/15
7/16 7/18 7/19 8/8 8/17
9/9 9/16 9/23 10/14
10/25 11/1 12/8 12/22
13/12 16/20 16/22
16/25 19/2 26/12 26/12
**scan [7]** 5/3 5/11 5/17
6/4 6/8 8/6 19/2
**scanning [3]** 4/11 4/11
20/12
**scans [21]** 5/13 7/12
8/9 8/17 11/3 11/25
12/11 12/21 12/23 13/7
14/3 14/19 16/13 19/14
21/5 21/5 21/8 21/9
21/13 23/9 23/24
**scenarios [1]** 15/18
**Scott [2]** 2/13 3/8
**screwdriver [3]** 16/16
16/18 16/19
**second [3]** 20/10 20/16
23/15
**see [2]** 5/10 7/24
**seen [1]** 3/21
**sense [1]** 23/11
**serious [1]** 22/7
**set [7]** 3/3 4/23 4/23
14/3 14/5 14/6 26/4
**severely [1]** 15/4
**shift [1]** 6/7
**shop [8]** 6/11 6/24 11/6
17/7 22/9 22/14 22/16
22/22
**shops [1]** 9/5
**short [1]** 24/3
**shot [1]** 17/9
**should [3]** 10/13 16/13
25/22
**shouldn't [1]** 25/22
**showing [1]** 5/16
**Shumway [3]** 2/18 30/9
30/10
**Sierra [1]** 9/13
**signature [2]** 30/7 30/7
**signing [1]** 30/4
**similarly [1]** 1/4
**simple [2]** 4/2 27/14
**simply [1]** 25/7
**situated [1]** 1/4
**slight [1]** 10/23
**Slow [1]** 23/18
**so [45]**
**some [12]** 19/13 19/20
19/21 20/5 20/7 20/24
21/2 21/13 22/8 23/1
27/6 28/24
**someone [7]** 15/7 15/7
15/8 21/18 22/1 22/7
23/1
**something [7]** 5/10
7/25 10/2 10/19 21/2
26/8 28/11
**sometimes [9]** 15/10
19/16 19/24 20/4 20/13
21/8 21/9 21/10 25/21
**Sorry [1]** 23/19
**sort [5]** 5/24 10/2 10/6
11/14 15/2
**sorts [1]** 14/14
**source [1]** 10/18
**sources [1]** 11/12
**speak [1]** 25/20
**speaking [1]** 7/8
**specific [3]** 3/23 13/3
19/21
**specifically [2]** 4/16
19/17
**square [1]** 15/17
**squeezing [1]** 21/1
**stage [4]** 23/2 23/12
27/24 28/2
**stand [1]** 10/14
**standard [3]** 10/15
11/21 18/19
**standards [1]** 12/18
**standing [1]** 3/20
**start [6]** 4/4 4/15 4/16
10/22 25/11 25/12
**state [4]** 3/6 3/19 27/5
29/6
**stated [2]** 27/17 28/20
**statements [3]** 16/12
16/12 16/13
**states [4]** 1/1 1/19 2/18
27/25
**states' [1]** 24/16
**stay [1]** 3/19
**stems [1]** 26/21
**step [3]** 14/7 14/24
25/25
**steps [8]** 14/19 14/20
15/6 15/21 16/2 17/10
19/7 28/24
**Steve [1]** 3/15
**Steven [1]** 2/4
**still [5]** 11/12 12/6
24/15 24/18 28/9
**straightforward [1]**
27/6
**Street [2]** 2/10 2/14
**strong [1]** 12/16
**strongly [1]** 18/10
**substantially [1]** 26/22
**such [1]** 27/9
**sufficient [1]** 23/22
**suggest [2]** 19/22

**S**

suggest... **[1]** 26/18
suggested **[2]** 20/2
20/10
suggesting **[3]** 10/20
20/16 21/7
Suite **[3]** 2/5 2/10 2/14
summary **[2]** 12/6
12/15
supermarket **[1]** 26/8
sure **[4]** 10/1 11/7
22/13 26/15
sweat **[1]** 20/25
system **[2]** 8/18 12/3

**T**

take **[14]** 14/7 15/7
15/7 16/2 16/13 17/10
21/24 22/13 22/15
22/16 25/25 26/24 28/5
28/24
taken **[1]** 27/1
takes **[1]** 16/21
taking **[2]** 10/22 22/21
talk **[2]** 13/9 13/16
talked **[1]** 10/10
talking **[5]** 7/11 12/2
15/13 26/15 26/16
talks **[1]** 13/17
Taylor **[1]** 2/14
technician **[1]** 5/9
techniques **[1]** 25/16
tell **[5]** 5/20 7/23 9/2
14/8 24/11
telling **[2]** 9/4 9/5
ten **[1]** 10/16
term **[8]** 18/1 18/11
25/13 26/21 28/9 28/13
29/5 29/5
terms **[15]** 4/8 16/22
18/2 18/3 18/12 24/9

24/11 24/13 25/2 26/17
26/19 27/8 27/12 28/7
28/13
test **[5]** 9/17 16/23
16/24 20/21 24/4
text **[6]** 7/15 8/1 8/3 8/5
8/6 10/3
textual **[1]** 7/14
than **[10]** 4/7 6/4 10/5
15/4 21/2 27/8 27/13
27/15 28/2 28/16
thank **[9]** 3/17 4/5
12/24 12/25 17/13 24/2
26/23 27/2 29/8
that **[172]**
that's **[27]** 5/2 7/7 7/13
8/19 9/16 10/20 13/3
13/24 15/6 15/24 15/24
16/3 18/7 18/9 18/13
18/22 19/15 21/13
21/14 23/11 24/22 25/5
25/9 26/17 27/23 28/7
28/17
their **[13]** 5/10 11/4
14/3 14/4 14/5 14/9
19/21 19/25 20/11
21/18 22/9 26/9 27/13
them **[5]** 4/12 19/13
19/18 21/4 23/22
themselves **[1]** 22/15
then **[18]** 4/17 5/20 6/4
6/5 6/13 6/25 7/20 8/19
9/16 11/4 13/15 15/19
19/8 19/19 20/21 22/22
27/1 28/15
theories **[1]** 29/7
theory **[3]** 3/21 24/14
26/19
there **[13]** 4/17 4/25
9/21 11/22 13/21 16/10
21/16 22/3 22/7 24/4
26/6 28/19 29/3

there's **[21]** 3/25 5/10
7/14 7/17 7/18 11/25
12/3 13/5 14/2 14/14
14/24 15/2 15/15 15/17
17/9 17/11 17/21 21/22
25/7 26/13 29/3
these **[13]** 5/13 6/12
7/12 8/17 9/11 9/23
11/2 11/25 12/9 12/9
12/11 14/10 20/12
they **[31]**
they'll **[1]** 17/8
they're **[4]** 10/11 20/11
21/1 21/1
they've **[3]** 13/14 18/18
22/13
thing **[1]** 11/8
things **[3]** 6/12 28/15
28/16
think **[22]** 8/12 8/13
10/2 10/16 14/16 14/17
15/2 15/15 19/12 20/7
22/13 22/25 24/4 25/6
25/11 27/5 27/13 28/6
28/10 28/12 28/14
28/21
third **[4]** 2/19 24/8
24/10 24/12
this **[65]**
those **[6]** 12/15 12/23
14/21 20/14 21/11
28/21
thousand **[1]** 10/16
time **[4]** 3/3 12/25 17/9
20/8
tire **[3]** 7/20 7/24 7/24
tires **[2]** 7/18 7/21
today **[3]** 11/14 11/16
27/18
Tonkon **[1]** 2/5
tool **[2]** 26/3 28/1
tools **[7]** 14/6 14/11

**T**

**tools... [5]**  16/14 24/20 24/23 25/16 25/21
**top [1]**  8/25
**Torp [1]**  2/5
**total [1]**  13/22
**tough [1]**  25/22
**towards [1]**  27/21
**trade [1]**  11/11
**transcript [3]**  1/17 30/5 30/6
**trial [2]**  12/15 20/24
**tricky [1]**  14/17
**troubling [1]**  19/23
**true [2]**  10/2 11/9
**truth [1]**  26/1
**try [1]**  13/1
**trying [2]**  9/11 10/8
**turn [1]**  17/14
**turns [2]**  13/2 13/5
**two [4]**  15/2 16/10 20/5 20/14
**typical [2]**  14/17 17/10
**typically [1]**  14/24

**U**

**ultimate [1]**  7/2
**ultimately [1]**  10/9
**under [6]**  6/14 14/18 16/9 20/9 20/12 28/23
**understand [3]**  4/7 22/16 24/15
**understanding [4]**  19/22 22/1 22/4 22/21
**unfortunately [1]**  15/16
**UNITED [3]**  1/1 1/19 2/18
**up [3]**  5/16 15/8 26/10
**us [3]**  14/8 17/20 24/11
**use [4]**  8/5 16/10 16/16 16/17

**used [1]**  10/17
**uses [3]**  8/6 14/11 25/13

**V**

**variety [1]**  26/4
**vehicle [24]**  4/13 5/1 8/21 8/24 8/25 9/9 9/20 10/25 11/2 11/23 11/24 13/3 13/5 13/17 13/20 13/22 13/24 17/6 21/18 24/19 25/14 25/16 26/13 26/22
**vehicles [3]**  8/21 11/4 12/17
**very [2]**  15/4 24/3
**view [1]**  29/6
**violation [1]**  28/4
**virtue [1]**  17/20

**W**

**want [5]**  4/15 4/16 11/14 18/16 25/7
**was [5]**  5/7 6/5 25/4 25/5 26/7
**Washington [1]**  2/10
**wasn't [6]**  4/1 4/18 5/1 25/4 27/6 28/22
**way [4]**  4/17 19/24 27/21 28/10
**ways [1]**  15/2
**we [33]**
**we'd [2]**  6/2 28/22
**we'll [9]**  7/15 7/15 7/16 7/17 7/18 7/19 7/21 19/2 29/8
**we're [14]**  4/19 6/7 6/20 7/11 8/18 11/21 13/15 15/20 21/11 24/6 24/10 24/12 26/15 26/16
**we've [2]**  8/20 15/12

**weird [1]**  15/11
**well [20]**  5/21 6/1 7/1 8/12 8/19 9/10 10/12 10/22 13/15 15/10 15/15 16/17 17/5 19/19 22/12 22/24 23/7 25/11 25/25 26/6
**were [1]**  12/2
**what [47]**
**what's [11]**  5/6 6/20 11/16 11/17 11/18 22/5 22/10 22/11 22/14 22/17 23/5
**whatever [3]**  5/20 15/8 22/15
**when [10]**  4/18 5/12 8/8 10/14 10/15 21/12 21/24 25/22 28/14 28/17
**where [3]**  10/13 11/24 20/24
**whether [9]**  5/7 9/19 11/4 11/23 12/12 15/6 22/24 22/25 23/2
**which [12]**  9/22 10/5 10/23 12/3 12/11 12/22 13/3 14/4 15/13 22/7 24/5 26/9
**who [3]**  16/23 21/18 22/7
**whole [4]**  15/17 22/21 26/10 28/14
**whom [1]**  12/17
**whose [2]**  17/2 17/3
**why [13]**  5/18 5/21 5/23 6/1 7/7 16/23 19/23 19/23 20/20 21/21 21/25 22/19 26/17
**will [9]**  6/16 10/10 10/10 12/16 12/18 17/7 19/7 20/23 23/21
**within [3]**  9/22 18/11

# W

**within... [1]** 21/16
**without [2]** 27/16 30/6
**won't [3]** 5/11 8/3
11/16
**word [4]** 8/5 8/6 13/4
16/10
**words [4]** 13/3 18/17
19/2 27/14
**work [2]** 4/17 6/11
**worried [1]** 21/1
**worth [1]** 20/22
**would [17]** 6/5 6/5 6/10
12/14 13/23 16/15 19/1
19/22 22/19 23/4 23/9
25/3 25/6 25/8 25/25
28/23 28/24
**wouldn't [4]** 5/7 6/3
12/1 20/20
**wrong [10]** 5/6 6/20
21/12 22/5 22/10 22/11
22/14 22/17 23/6 25/9

# X

**x-ray [2]** 5/15 5/16

# Y

**yes [13]** 7/4 9/18 12/8
16/5 17/16 17/19 17/24
18/2 18/21 18/24 22/18
23/12 25/8
**you [85]**
**you'd [1]** 28/16
**you'll [3]** 7/23 8/3 9/7
**you're [10]** 4/25 6/9
10/5 11/12 11/17 15/13
17/22 20/16 24/25 25/5
**you've [4]** 3/21 7/25
10/17 20/10
**your [47]**