**Steven D. Olson**, OSB No. 003410
  Direct Dial: 503.802.2159
  Direct Fax: 503.972.3859
  Email: steven.olson@tonkon.com
**Paul Conable**, OSB No. 975368
  Direct Dial: 503.802.2188
  Direct Fax: 503.972.3888
  Email: paul.conable@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204-2099

    Attorneys for Plaintiff Leif Hansen

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| LEIF HANSEN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Maryland corporation,<br><br>    Defendant. | Civil No. 3:17-cv-01986-MO<br><br>**CLASS ACTION**<br><br>**AMENDED COMPLAINT (Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing)**<br><br>**DEMAND FOR JURY TRIAL** |

For his Amended Complaint against Defendant Government Employees Insurance Company ("GEICO"), Plaintiff Leif Hansen ("Leif"), individually and on behalf of all similarly-situated members of the Class, alleges as follows:

PAGE 1 -    CLASS ACTION AMENDED COMPLAINT

## INTRODUCTION

1. This case involves a nationwide policy and practice by GEICO under which GEICO routinely refuses to compensate GEICO vehicle insurance policyholders for necessary repairs, in particular, for electronic scans of their vehicles after a collision.

2. Modern vehicles are computers on wheels. Dozens of computers use millions of lines of software code to operate all of a vehicle's essential functions, from door locks and power steering, to automatic engine and braking systems.

3. Automobile manufacturers require or recommend that, as part and parcel of every collision repair of a modern vehicle, a mechanic conduct electronic scans to diagnose the latent damage to the vehicle and then ensure that the latent damage has been repaired.

4. As a result of GEICO's policy and practice, GEICO policyholders who drive a modern vehicle are denied complete and safe collision repairs. Policyholders thus do not receive payment for the full extent of their losses under their GEICO policy, and GEICO frustrates the policyholders' reasonable expectation that GEICO pay for electronic scans following a collision.

5. Without the electronic scans, latent damage to the policyholders' vehicles goes undetected and unrepaired; system problems go unexplained; and GEICO puts unsafe cars back on the roads.

## PARTIES

6. Leif is an individual who is a citizen of the state of Oregon. He is a GEICO policyholder.

7. GEICO is a foreign corporation with its principal place of business in Chevy Chase, Maryland. During all relevant time periods, it has been licensed by the Oregon Department of Consumer and Business Services to conduct business and sell insurance products

in Oregon.  GEICO sells and/or underwrites car insurance policies that provide collision repair coverage in the state of Oregon, as well as throughout the United States.  GEICO is currently the second largest private passenger automobile insurance carrier in the country by market share.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over all claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and diversity of citizenship exists between Leif and GEICO.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the acts and events giving rise to Leif's claims occurred here.

## FACTUAL ALLEGATIONS

**A.     Leif's Individual Factual Allegations**

10. GEICO sells car insurance, including coverage for collision losses, to drivers in Portland, Oregon, and across the United States.  GEICO holds itself out as a low-cost automobile insurer, but endeavors to decrease the sum GEICO must pay its policyholders by refusing to compensate policyholders for necessary and complete repairs.

11. Leif holds a GEICO car insurance policy, including coverage for collision losses, for his 2017 GMC Sierra 3500 pickup truck ("Sierra 3500").

12. GEICO's car insurance policy (the "Policy") uses standard language provided by Insurance Services Office, Inc.  As part of that standardized language, the Policy specifies that GEICO "will pay for collision loss to the owned auto or non-owned car for the amount of each loss less the applicable deductible."  In relevant part, the Policy defines loss as "direct and accidental loss of or damage to * * * an insured auto, including its equipment."

13.     Leif's Sierra 3500, like all modern vehicles, has computers that control all of the vehicle's essential functions, including steering, braking, acceleration, and battery systems. These computers talk to and work with each other. Collision damage to one part of the vehicle can disrupt electronic systems in other parts of the vehicle, thereby rending the car unsafe to drive. And collision damage to the vehicle's electronic systems often is undetectable to the naked eye.

14.     In or about November 2017, Leif's Sierra 3500 suffered damage to the rear bumper in a collision. On Saturday, November 4, 2017, he filed a claim with GEICO and received an appointment time for a repair estimate at Artistic Car Body ("Artistic").

15.     During his appointment for a repair estimate at Artistic, Leif requested pre- and post-repair electronic scans to ensure that his vehicle was repaired safely and completely. Leif knew that the scans were a necessary part of collision repairs from his experience as an owner of a group of Portland-area auto repair shops.

16.     Pre- and post-repair electronic scans use software to test for diagnostic trouble codes that identify latent damage and help ensure safe and complete repairs. In short, the scans identify what is damaged in the vehicle and why. For example, in cars with advanced driver assistance systems, electronic scans identify the precise damage to those systems and, following a repair, ensure that the damage was in fact repaired.

17.     Electronic scans cost roughly $100 each.

18.     Nissan, Honda, Toyota, and General Motors, among other manufacturers, have issued public statements requiring or recommending that auto collision repair shops use electronic scans before and after repairs of each of their modern vehicles.

19. General Motors, for example, has released a position statement

> [t]hat all vehicles being assessed for collision damage repairs must be tested for Diagnostic Trouble Codes (DTCs) during the repair estimation in order to identify the required repairs. Additionally, the vehicle must be re-tested after all repairs are complete in order to verify that the faults have been repaired and new faults have not been introduced during the course of repairs. Even minor body damage or glass replacement may result in damage to one or more safety-related systems on the vehicle. Any action that results in loss of battery-supplied voltage and disconnection of electrical circuits requires that the vehicle is subsequently tested to ensure proper electrical function.

20. The Automotive Service Association, an independent organization dedicated to advancing the automotive repair industry, also released a public statement endorsing electronic system scanning as necessary for safe collision repair of modern vehicles.

21. Nissan, Honda, Toyota, General Motors, along with other vehicle manufacturers, and the Automotive Service Association require or recommend pre- and post-repair electronic scans whether or not maintenance lights are illuminated on a vehicle's dash.

22. Electronic scans are part and parcel of every collision repair of a modern vehicle for which the manufacturer recommends or requires electronic scans following a collision. GEICO's refusal to pay for pre-repair and/or post-repair scans fails to restore vehicles to their pre-collision, pre-loss condition: without those scans, there is a significant risk of latent collision damage going undetected and unrepaired, and latent collision damage indeed goes undetected and unrepaired.

23. When Leif requested the electronic scans on his General Motors vehicle, for which the manufacturer requires pre- and post-repair scans, GEICO's representative refused to authorize the scans.

PAGE 5 -   CLASS ACTION AMENDED COMPLAINT

24. On or about November 8, 2017, Leif again requested electronic scans to ensure that the Sierra 3500 had been safely and completely repaired. GEICO's representative again refused to authorize the scans.

25. GEICO's refusal to compensate Leif for pre- and post-repair electronic scans on the Sierra 3500 delayed Leif from receiving the electronic scans mandated by General Motors, thereby disregarding the manufacturer's recommendations and putting the truck at risk for having undetected repairs and being unsafe to drive.

26. GEICO's refusal to pay for both pre-repair and post-repair scans indeed caused Leif's truck to have latent damage that went unrepaired, which rendered the vehicle unsafe to drive. Leif subsequently paid for scans after GEICO refused to do so, which identified damage to the back bumper's right sensor. As a result, the sensor would not have alerted to a person or object. For example, had a child walked behind the vehicle while Leif was backing up, Leif inadvertently could have struck the child due to the unrepaired safety system in the vehicle.

27. Leif has personal knowledge of other instances where GEICO refused to compensate a policyholder for pre- and post-repair electronic scans that a mechanic and/or the vehicle manufacturer required or recommended. Earlier in 2017, for example, a customer brought a car to one of Leif's auto repair shops. The car had airbag and steering system problems that could have been avoided had GEICO authorized pre- and post-repair electronic scans to detect unresolved damage. GEICO continues to refuse to cover the cost of electronic scans that could help resolve the airbag and steering system issues for this car.

28. Moreover, GEICO has stated in writing its practice of refusing to authorize electronic scans at any and all collision repair shops. GEICO Auto Damage Adjuster Timothy Lewis has clearly stated GEICO's policy that, "There will be no pre-approval of these scans

before they are performed." GEICO also requires "[a]n *official document* from the manufacturer" stating that "the scan is *required* for the particular make, model and year of the vehicle." (Emphasis added.) But as GEICO well knows, this policy guarantees that no scan will be pre-approved because although automobile manufacturers have issued official statements requiring or recommending electronic scans, no manufacturer issues such official documents for particular vehicle makes, models, and years.

### B.    Putative Class Allegations

#### 1.    GEICO's Practices With Regard to Members of the Putative Class

29.    Leif realleges paragraphs 1 through 28 of this Amended Complaint.

30.    GEICO has a nationwide practice of denying compensation for necessary pre- and post-repair electronic scans to policyholders' vehicles under the pretext that the Policy does not cover them.

31.    GEICO's practice of denying payment for pre- and post-repair electronic scans results in GEICO denying its policyholders full compensation to pre-loss condition for their vehicles.

32.    When GEICO underpays for its policyholder losses, GEICO pockets money that it otherwise would have to pay out in compensation for pre- and post-repair electronic scans, as well as any additional necessary repairs detected by such scans.

33.    GEICO's conduct violates the express terms of the Policy, which obligates GEICO to pay for all collision losses, excepting only the applicable deductibles and other exclusions that do not apply here.

34.     GEICO's conduct also violates the objectively reasonable expectation, held by both Leif and all GEICO policyholders who drive a modern car, that GEICO cover the cost of diagnostic scans following a collision to a covered vehicle.

**2. Rule 23 Allegations**

35.     Leif brings this action as a Class Action under Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3), on behalf of a nationwide class of current and former GEICO car insurance policyholders in the United States who drive a modern vehicle for which the manufacturer recommends or requires electronic scans following a collision, and for whom GEICO has refused to authorize or pay for a pre-repair and/or post-repair scan following a collision within six years of the date of the filing of the original Complaint in this case.

36.     Leif also brings this action as a Class Action on behalf of a subclass of current and former GEICO policyholders identified in the preceding paragraph who are or were Oregon policyholders.

37.     The exact number of Class members is not presently known to Leif, but can be determined readily by appropriate discovery. On information and belief, Leif alleges that in 2016, GEICO insured 11.92% of all drivers who carried car insurance in the United States, more drivers than any other private passenger auto insurance carrier other than State Farm. The Class is thus so numerous that joinder of all Class members is impracticable.

38.     Leif can and will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in Class Actions and breach of contract claims.

39.     Leif's claims, as those of the representative party, are typical of those of the Class.

40. A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy because:

    a. The damages suffered by many individual members of the Class may be relatively small, and thus the expense and burden of individual litigation makes it virtually impossible for the members of the Class individually to seek redress for the wrongful conduct alleged herein;

    b. Class members do not have an overriding interest in individually controlling the prosecution of separate actions;

    c. No Class member has commenced litigation concerning this breach of contract controversy;

    d. Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

    e. The prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications establishing incompatible standards of conduct for GEICO.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

    a. Whether GEICO refused to pay policyholders for pre- and post-repair electronic scans that were required or recommended by vehicle manufacturers and independent industry authorities;

      b.      Whether pre- and post-electronic scans and the diagnostic codes associated with them qualify as a "loss" or "repair" under the terms of the Policy;

      c.      Whether GEICO's conduct breached the terms of the Policy, issued to each policyholder;

      d.      Whether GEICO's conduct breached the implied covenant of good faith and fair dealing for each policyholder; and

      e.      Whether Leif and Class members have sustained injury by reason of GEICO's acts and omissions.

42.      Leif envisions no difficulty in the management of this litigation as a Class Action.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

43.      Leif realleges paragraphs 1 through 42 of this Amended Complaint.

44.      The Policy specifies that GEICO will either pay for all "direct and accidental loss of or damage to * * * an insured auto, including its equipment" after collisions or make the necessary repairs itself, subject only to certain exclusions that are not applicable here.

45.      All of GEICO's automobile insurance policies contain the language set forth in paragraph 37 above. The Policy uses the standard form language approved by Insurance Services Office, Inc.

46.      GEICO policyholders pay insurance premiums in exchange for coverage under the Policy.

47.      The Policy constitutes a valid and enforceable contract between GEICO and policyholders.

48.     As a matter of policy and practice, GEICO does not compensate policyholders for pre- and post-repair electronic scans after collisions.  This results in policyholders receiving incomplete compensation for their collision losses both for the scans themselves and for further necessary repairs that the scans would reveal.

49.     GEICO's refusal to pay for pre-repair and/or post-repair electronic scans leaves policyholders with latent collision damage to their vehicle that goes unrepaired.

50.     GEICO fails to restore policyholders' vehicles to their pre-loss physical condition by refusing to pay for pre-repair and/or post-repair electronic scans that would identify and diagnose any and all latent collision damage to the vehicle.

51.     GEICO's failure to compensate policyholders for the full extent of their losses following collisions violates the express terms of the Policy.

52.     As a direct result of GEICO's breach of its insurance Policy, Leif and members of the Class have (a) been denied payment for electronic scans that should have been covered by their GEICO insurance policies; (b) been deprived of the use of their vehicles because of unsafe or incomplete repairs after collisions; and (c) driven vehicles that were unsafely or incompletely repaired after collisions.

53.     Leif and members of the Class are entitled to recover actual damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

54.     Leif realleges paragraphs 1 through 53 of this Amended Complaint.

55.     In every contract there is an implied covenant known as the covenant of good faith and fair dealing that neither party will do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

56.     GEICO policyholders, whose covered vehicle is a modern vehicle for which for which the manufacturer recommends or requires electronic scans following a collision, have a reasonable expectation that, following a collision, GEICO will pay for pre-repair and post-repair scans to diagnose latent damage to the vehicle and ensure that the damage was repaired properly. GEICO's policy and practice of refusing to pay for pre-repair and post-repair scans frustrates this reasonable expectation.

57.     GEICO has breached the implied covenant of good faith and fair dealing inherent in the Policy and deprived policyholders of the benefits of the contract by failing to pay for scans necessary to identify and diagnose latent collision damage to policyholders' vehicles.  In doing so, GEICO has failed to pay for repairs necessary to restore vehicles to pre-loss condition and, instead, has caused policyholders to accept vehicles that are unsafely or incompletely repaired after collisions and whose value has been diminished from their value before the collision.  In cases where the policyholder accepts payment in lieu of repair, GEICO thereby makes payments far below the actual amount of loss.

58.     GEICO has used its superior knowledge and bargaining position to deprive unwitting policyholders of the benefit of the Policy.

**RELIEF REQUESTED**

WHEREFORE, Leif, on behalf of himself and members of the Class, demands judgment as follows:

1. Judgment in favor of Leif and the Class and an award of:

    a. Actual damages for losses incurred by Leif and each member of the Class;

    b. Costs incurred in bringing this action;

    c. Pre- and post-judgment interest; and

2. Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Leif, on behalf of himself and members of the Class, demands a jury trial.

DATED this 29th day of July, 2019.

        TONKON TORP LLP

        By: *Steven D. Olson*
           Steven D. Olson, OSB No. 003410
           Paul Conable, OSB No. 975368

           Attorneys for Plaintiff Leif Hansen

039599/00001/10226677v1